UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21660-Civ-LENARD
MAGISTRATE JUDGE P. A. WHITE

DOUGLAS MONTGOMERY LLOYD,          :

      Petitioner,          :

v.          :          REPORT OF
                             MAGISTRATE JUDGE

WALTER A. McNEIL,[1]          :

      Respondent.          :

_____

## Introduction

Douglas Montgomery Lloyd has filed a _pro se_ petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his convictions for five counts of armed robbery with a firearm, five counts of false imprisonment with a firearm, and felon in possession of a firearm entered in Miami-Dade County Circuit Court, case no. F98-19062A.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of this petition (DE#1) and addendum (DE#2), the Court has the response of the state to an order to show cause with multiple exhibits (DE#s12,14), and the petitioner's

---

[1] Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

reply (DE#18).

The petitioner raises the following 7 claims:

1.  His due process rights were violated and he was denied a fair trial on the basis that the jury instructions were unlawful, and appellate counsel was ineffective for failing to raise the issue on appeal, which deprived the petitioner of the relief granted his codefendant who did raise the issue. (DE#1:5; DE#18:7-10).

2.  His convictions were obtained by the use of an impermissibly suggestive show-up procedure which violated the petitioner's due process rights, his right to a fair trial, and his right to have counsel present at the show-up. (DE#1:5; DE#2:11-20).

3.  His constitutional rights were violated on the basis that the prosecution withheld exculpatory evidence. (DE#1:6; DE#2:20-25).

4.  His due process rights were violated as there was insufficient evidence to support his convictions. (DE#1:6; DE#2:25-29).

5.  His constitutional rights were violated on the basis that the trial judge was biased against the petitioner. (DE#1:6a; DE#2:29-32).

6.  His constitutional rights were violated on the basis that his convictions were obtained by prosecutorial misconduct. (DE#1:6b; DE#2:33-36).

7.[2] He was denied effective assistance of counsel, where his lawyer failed to:

---

[2]For purposes of clarity, the subclaims are numbered as they appear in the initial federal habeas petition.

1.   properly and sufficiently advise the petitioner of the evidence against him, the likelihood of conviction at trial, the state's burden of proof, and the consequences of rejecting the state's plea offer which caused the petitioner to make an unknowing and involuntary rejection of the prosecution's plea, (DE#1:6b);

2.   present evidence and argue the correct legal principle in support of the petitioner's motion to suppress the identification which was obtained by an impermissible, suggestive show-up, (DE#1:6b-c);

3.   investigate and review available, recent research on eyewitness identifications and to procure an expert in the field of eyewitness identification reliability, (DE#1:6c);

4.   present evidence in support of the defense theory asserted during opening statements, (DE#1:6c);

5.   object and move for a mistrial at each incident of judicial misconduct, (DE#1:6c);

6.   file a motion in limine to preclude Desire from testifying regarding the clothing the petitioner was wearing at the time he was arrested, and otherwise object at trial to its introduction on the basis that the prosecution failed to lay the proper foundation, (DE#1:6c);

7.   act upon the state's _Brady_[3] violation where the prosecution introduced at trial photographs of pants that were recovered from a

---

[3]_Brady v. Maryland_, 373 U.S. 83 (1963).

3

laundry room which contained items taken from the victims, (DE#1:6c);

8.  procure an expert to examine the fingerprint evidence and consult with the defense at trial, (DE#1:6c);

9.  object and move to exclude opinion testimony of the prosecution's fingerprint examiner where the witness was never tendered nor accepted as an expert in that field, (DE#1:6c);

10.  object and move for a mistrial at each incident of prosecutorial misconduct, (DE#1:6c);

11.  object and move for a mistrial when codefendant's counsel during closing argument made a statement directly inferring the petitioner's guilt, (DE#1:6c);

12.  move the court to inquire into juror's professed need to be released from jury duty due to an undisclosed personal matter, (DE#1:6c);

13.  request a hearing or investigation into jury tampering when it became known that a police officer was observed having an *ex parte* communication with the petitioner's jury panel, (DE#1:6c);

14.  file a motion in limine to preclude the prosecution from introducing evidence of the victim's medical condition and the death of the petitioner's codefendant (DE#1:6c);

15.  inform petitioner that he had a right to ratify the jury strikes and object to the selection of the jury panel, (DE#1:6c);

16. investigate and move for discharge
    of the venire panel on the basis of
    racial disproportionality resulting
    from a systematic exclusion of
    blacks from the jury pool
    composition in Miami-Dade County,
    Florida, (DE#1:6c); and,

17. argue that the cumulative effects of
    counsel's errors warrant vacatur of
    his convictions (DE#1:6c).

<u>Procedural History</u>

The procedural history of the underlying state court conviction reveals as follows. On June 5, 1998, the petitioner was charged with second degree felony murder, seven counts of armed robbery with a firearm, seven counts of false imprisonment with a firearm, possession of a firearm during the commission of a felony, felon in possession of a firearm, burglary of an unoccupied structure, and resisting an officer without violence, all arising from his involvement with three other assailants. Prior to trial, the prosecution dismissed the felony murder charge and two counts of armed robbery and false imprisonment, and *nolle prossed* the offense of burglary and resisting arrest. The felon in possession of a firearm appears was severed prior to trial. He then proceeded to trial, where he was convicted of five counts of armed robbery with a firearm, five counts of false imprisonment, and possession of firearm in the commission of a felony, following a jury verdict. He was adjudicated guilty and sentenced to life in prison on the armed robbery and false imprisonment offenses. Thereafter, the petitioner pled guilty to the felon in possession of a firearm offense, and was sentenced as to that offense to a concurrent five year term of imprisonment.

The petitioner appealed, raising essentially the same claims as claims two and four of this federal petition, as listed above. On April 30, 2003, based on the state's concession of error, the Third District Court of Appeal vacated petitioner's conviction for possession of a firearm in the commission of a felony and felon in possession of a firearm, and affirmed the remaining convictions and sentences. Lloyd v. State, 843 So.2d 364 (Fla. 3 DCA 2003). Thus, the judgment of conviction became final, for purposes of the AEDPA's one year statute of limitations, at the latest on July 30, 2003, ninety days following the affirmance of the convictions and sentences on direct appeal.[4]

A little over four months of untolled time expired until December 4, 2003, when the petitioner returned to the state court filing his first Rule 3.850 motion for postconviction relief raising a plethora of claims, including essentially claims three, five, six, and seven[5] of this federal petition, as listed above. (DE#14:Ex.A:28-87). Following an evidentiary hearing, the trial court entered an order denying all of the claims on the finding that the errors complained of were without merit for numerous reasons. (DE#14:Ex.D:1-2). That denial was *per curiam* affirmed without published opinion. Lloyd v. State, 976 So.2d 1117 (Fla. 3 DCA 2007)(table). The appellate court's on-line docket reveals that rehearing and rehearing *en banc* were denied, with the mandate

---

[4]For federal purposes, a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, Bond v. Moore, 309 F.3d 770 (11 Cir. 2002); Coates v. Byrd, 211 F.3d 1225 (11 Cir. 2000). Ordinarily, a petition for writ of certiorari must be filed within 90 days of the date of the entry of judgment, rather than the issuance of a mandate. Supreme Court Rule 13.

[5]It appears that only subclaim 17 unexhausted and barred as it was never raised in the state forum.

issuing on March 24, 2008.[6]

While the above proceeding was still pending, the petitioner returned to the appellate court filing a state petition for writ of habeas corpus, raising numerous claims of ineffective assistance of trial and appellate counsel, including essentially claim one of this federal petition, as listed above. On December 28, 2005, the habeas petition was denied in a published, written opinion. Lloyd v. State, 917 So.2d 988 (Fla. 3 DCA 2005). Rehearing was denied on February 8, 2006. (DE#14:Ex.C). The Florida Supreme Court denied discretionary review. Lloyd v. State, 935 So.2d 1220 (Fla. 2006).

The limitations period ran unchecked from March 24, 2008, the date the mandate issued at the conclusion of the petitioner's appeal of the denial of his Rule 3.850 motion, until he came to this court timely filing this federal habeas corpus petition on June 4, 2008.[7] (DE#1). The petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); Penry v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). The respondent concedes correctly that this petition was filed within the one-year limitations period of 28 U.S.C. §2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Artuz v. Bennett, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period).

---

[6]See www.3dca.flcourts.org.

[7]See: Adams v. United States, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

7

It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. Anderson v. Harless, 459 U.S. 4 (1982); Hutchins v. Wainwright, 715 F.2d 512 (11 Cir. 1983). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. Baldwin v. Reese, 541 U.S. 27 (2004); Gray v. Netherlands, 518 U.S. 152, 163 (1996); Duncan v. Henry, 513 U.S. 364, 365-366 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971).

Exhaustion requires that a claim be pursued in the state courts through the appellate process. Leonard v. Wainwright, 601 F.2d 807 (5 Cir. 1979). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial; Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979), or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal from its denial. See Caraballo v. State, 805 So.2d 882 (Fla. 2 DCA 2001). A claim of ineffective assistance of appellate counsel must be raised by petition for writ of habeas corpus in the appropriate district court of appeal. State v. Dist. Ct. of Appeal, First Dist., 569 So. 2d. 439, 442 n.1 (Fla. 1990). These principles will be discussed when relevant in connection with the petitioner's

8

individual claims *infra*.


## Facts Adduced At Trial


For an appreciation of the plethora of issues raised in this habeas proceeding, a full review of the facts adduced at trial is essential. The convictions stem from the armed robbery of a business, where the occupants were tied up with duct tape, and their jewelry and valuables taken. At trial, the prosecution presented the testimony of five employees of the Community Redevelopment Center, a home renovation business, located on the second floor of a small office building on West Dixie Highway in the northwest section of Miami. (T.334-35). Barry Gerber, a financial administrator with the company, testified that on June 5, 1998, he was working, and as part of his Friday routine, he went to the bank in the morning to make deposits and pick up cash for bonuses for the office telemarketing personnel. (T.335). On that date, he picked up $750.00 from the bank, and gave it to Joan Schwartz, who put it in a gray zipper bag in her office. (T.335-36).

At approximately 1:15 p.m., Gerber recalls seeing the door to the business open and a man carrying a silver revolver enter the premises. (T.338). At that time, the assailant held a gun to Gerber's head, ordered everyone to get down on the floor, and demanded to know the location of the money. (T.338-40). In response, Gerber pointed towards the cabinet where the money was routinely kept. (T.340). When Gerber opened the cabinet, the bag was not there, at which time, his co-worker Joan, indicated the bag was in a drawer near her work station. (T.340). After locating the bag, Gerber handed it to the assailant, who then proceeded to tape Gerber's arms behind his back, but not before taking Gerber's rings

and bracelet. (T.340-41). During the robbery, Gerber overheard one of the assailants yell, "Get the jewelry." (T.339,341,343-44). Shortly thereafter, the assailants left, and Gerber was able to free himself. (T.342). Gerber conceded that his jewelry had been recovered by police, and that the business normally did not have cash on hand except on Fridays. (T.347-348).

Two undercover detectives, Silvio Alvarez and James Colangelo, testified they were driving by the Community Redevelopment Corporation building when they observed three males running out towards the middle of the street. (T.448-49,476). One of the individuals was carrying a shopping bag. (Id.). The men then got into a blue car, where a fourth individual was waiting for them. (T.450-51,459-60,477). As the blue car tried to leave, Detective Colangelo drove in front of it, blocking their exit, while Detective Alvarez pulled up behind the vehicle. (T.350,478-79). The blue car hit Detective Colangelo's car, at which time the detectives exited their vehicles with their revolvers drawn, and identified themselves. (T.451,481,484). Three men exited the vehicle and ran. (T.452,483). A fourth was caught as he tried to get out. (T.453-454,457,485). A yellow bag found inside the blue car was identified by Detective Alvarez as the same bag that one of the men was observed holding as he ran down the street. (T.455). Meanwhile, Detective Colangelo chased the petitioner and another assailant through an open field, where a firearm was later recovered. (T.454,486-487,498,526,698-700). Codefendant Jason Woodruff, was apprehended, but died as a result of an asthma attack he suffered during the chase. (T.488-494).

In the interim, Patricia Desire, a teenager who lived several blocks from the scene, testified that on the day of the incident, she was walking home from school when she saw that the laundry room

of her duplex was open. (T.548-552). When she looked inside, she saw a stranger, who instructed her to shut up and close the door. (T.553-555). Shortly thereafter, while Desire was telling one of the officers in the area what she had observed, the petitioner fled the laundry room. (T.557-558). The petitioner was ultimately apprehended and thereafter, Desire was taken by police to a show-up, where she positively identified the petitioner from among a group of men, as the individual who was concealed inside the laundry room of her duplex. (T.562,577, 591-93). According to Desire, the petitioner was wearing a red shirt and brown pants which belonged to Desire's brother. (T.562). She further testified that a smelly pile of clothes, not belonging to her family, was left in the laundry room. (T.563). Inside the wet pant pocket of one of the items left behind was some jewelry, money, and a Community Redevelopment business card, all belonging to one or more of the victims of the robbery. (T.315,595-598). At trial, Desire also positively identified the petitioner as the individual she observed in the laundry room. (T.563-64).

Officer Fletcher, the crime scene investigator, testified that he looked inside the back seat of the blue get-away car, and saw a yellow plastic bag and a firearm on the backseat. (T.289,306). The bag contained a bank bag, wallets, beepers, cell phones, jewelry, and identifications. (T.289-292). Latent fingerprints were taken from the blue vehicle, but only one matched the petitioner, and none matched the codefendants. (T.296,617-25,636,678-82).

## Discussion of the Claims

Turning to the merits of the claims raised in the collateral proceeding, Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts

11

to grant habeas corpus relief. Under the AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11 Cir. 2002)." <u>Stewart v. Sec'y Dep't of Corr</u>., 476 F.3d 1193, 1208 (11 Cir. 2007). <u>See also</u> <u>Parker v. Sec'y Dep't of Corr</u>., 331 F.3d 764 (11 Cir. 2003). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).

A federal court must afford a high level of deference to the state court's decision. <u>See</u> <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11 Cir. 2008); <u>Parker v. Sec. Dept. of Corrections</u>, 331 F.3d at 768. Consequently, a federal court may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)(majority opinion by O'Connor, J.).

"[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware

of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003)(<i>quoting</i> <u>Early v. Packer</u>, 537 U.S. 3, 7-8 (2002). Even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision. <u>See</u> <u>Wright v. Sec. of Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11 Cir. 2002). Moreover, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005); <u>Crowe v. Hall</u>, 490 F.3d 840, 844 (11 Cir. 2007), <i>cert. denied</i>, ____ U.S. ____, 128 S.Ct. 2053 (2008); <u>Henderson v. Campbell</u>, 353 F.3d 880, 889-90 (11th Cir. 2003).

        As will be demonstrated in more detail <i>infra</i>, the petitioner is not entitled to vacatur on any of the claims presented.[8] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the movant a fundamentally trial and due process of law. The movant therefore is not entitled to habeas corpus relief. <u>See</u> <u>Fuller v. Roe</u>, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas

---

        [8]Briefly, as narrated previously in this Report, the evidence against the petitioner was more than sufficient to support his convictions. The petitioner has not shown that the result of the trial or appeal would have been affected had counsel proceeded differently. In other words, no deficient performance or prejudice pursuant to <u>Strickland</u> has been established arising from any of the claims raised in this collateral proceedings, nor has a denial of due process been demonstrated. To the contrary, it is clear after independent review of the record that the petitioner received a fair trial, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to habeas corpus relief in this collateral proceeding.

corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

In **claim 1**, the petitioner asserts that his due process and equal protection rights were violated and he was denied a fair trial on the basis that the jury instructions were unlawful, and appellate counsel was ineffective for failing to raise the issue on appeal, which deprived the petitioner of the relief granted his codefendant who did raise the issue. (DE#1:5; DE#18:7-10).

As the Supreme Court has noted, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). The state habeas court declined to grant relief based on this claim, finding in pertinent part as follows:

> Petitioner seeks a writ of habeas corpus based on our holding in Dorsey v. McRay, 901 So.2d 225 (Fla. 3d DCA 2005). The petitioner, Douglas Montgomery Lloyd, was a codefendant with Gregory Dorsett and both were tried together. In considering Dorsett's petition for a writ of habeas corpus, we determined that the court's jury instructions on robbery and false imprisonment resulted in fundamental error through the use of the "and/or" conjunction, which confusingly and incorrectly implied that either defendant could be convicted solely upon a finding that the other defendant's conduct satisfied the elements of the offenses. Dorsett, 901 So.2d at 226.
>
> Had there been no material distinction between the cases

14

of Gregory Dorsett and Douglas Montgomery Lloyd, we would certainly grant the relief sought, vacate the remaining convictions, and grant a new trial. **However, in reviewing the case for fundamental error, we find that there exists a material distinction between the cases of Dorsett and Lloyd. Lloyd was allegedly one of the three armed gunmen that held up the victims in this case while Dorsett was allegedly the getaway driver. Dorsett was previously employed by the victims and, as a result, would have certainly been recognizable to the victims. After a careful review of the trial record, we find that there is nothing that Dorsett did or could have done which would have resulted in the wrongful conviction of Lloyd as a result of the improper "and/or" conjunction. As such, the trial court's error in giving a jury instruction on robbery and false imprisonment with an "and/or" conjunction was harmless as to Lloyd.**

Lloyd v. Crosby, 917 So.2d 988 (Fla. 3 DCA 2005).

    In this case, independent review of the record reveals that the court's decision in this regard was not error. The evidence established that the petitioner was one of three men who entered a business premise with guns, threatened, and forcibly restrained the victims, taking their money and valuables. (DE#14:Ex.A:T.410-416).[9] The petitioner and two others exited the business carrying a bag with the robbery proceeds, and entered co-defendant Dorsett's waiting car. When they attempted to flee, the car crashed into an undercover police car that had just pulled up after the officers noticed the fleeing robbers running down the street. All four robbers then exited the getaway car and attempted to flee on foot. (T.433-36,475-85). The petitioner fled into a nearby apartment building laundry room and was ultimately apprehended from the crawl space under a house. He was identified by a witness at the laundry room and one of the police officers who saw the robbers enter the getaway car and then exit the vehicle, fleeing on foot. (T.495-

_____

    [9]The trial transcripts have been provided by the respondent and are part of Exhibit A to the Appendix. References to the letter "T" following by a number in this Report are citations to the trial transcripts.

98,553-64). During closing, the prosecution explained that Dorsett never exited his car nor approached the business because he had recently worked there and his former co-workers would recognize him. (T.833-34,841).

As the Supreme Court has made clear, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004). Rather, in order to warrant habeas relief, the petitioner faces a substantial burden and must establish that the erroneous instruction given by the trial court was so prejudicial that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Kibbe, 431 U.S. at 154. It is not enough to show merely that the instruction was "undesirable, erroneous, or even universally condemned." Id. Moreover, a challenged instruction should not be viewed in isolation but in the context of the entire charge as well as the entire trial record. Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); Parker v. Secretary for the Dep't of Corr., 331 F.3d 764, 779 (11th Cir. 2003) (citing Estelle, 502 U.S. at 72; Agan v. Vaughn, 119 F.3d 1538, 1545 (11th Cir. 1997)). In this case, no due process violation occurred. There is no possibility that the petitioner, an active participant, was convicted of the offenses based on the actions of the getaway driver, codefendant Dorsett. Under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this claim on direct appeal. Consequently, the state's court rejection of the claim was in accordance with applicable federal constitutional principles and should thus not be disturbed here. Williams v. Taylor, supra.

In **claim 2**, the petitioner asserts that his convictions were obtained by the use of an impermissibly suggestive show-up procedure

which violated the petitioner's due process rights, his right to a fair trial, and his right to have counsel present at the show-up. (DE#1:5; DE#2:11-20).

First, the petitioner attacks here, as he did on direct appeal in the state forum, the show-up identification procedure used by the police to obtain the eyewitness' identification as so suggestive and lacking in reliability as to amount to a violation of due process. When determining the admissibility of eyewitness testimony, the primary evil to be avoided is a very substantial likelihood of misidentification. "It is the likelihood of misidentification which violates a defendant's right to due process...." Neil v. Biggers, 409 U.S. 188, 198 (1972). The Court in Neil made clear that, even in cases where the confrontation procedure may have been suggested, the central question is whether, under the totality of the circumstances, the identification was reliable.[10]

The courts look to the following factors to determine the reliability of the identification: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness' degree of attention during the crime; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199-200 (1972). Against these factors, the court must weigh the corrupting effect of a suggestive identification. Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

---

[10]The Florida courts employ the same standard to determine if an out-of-court identification should be excluded. See Grant v. State, 390 So.2d 341, 343 (Fla.), cert.denied, 451 U.S. 913 (1981).

Review of the record reveals that trial counsel filed a pretrial motion to suppress the show-up identification on grounds that it was impermissibly suggestive and obtained in violation of the petitioner's due process rights. (DE#14:Ex.A:196-201). A hearing was held, and after hearing testimony and argument of counsel, the trial court denied the motion to suppress, stating as follows:

> ...While working on assignment at that scene he [Sergeant Hellman] was given the task of interviewing Patricia Desire. According to Sgt. Hellman, Ms. Desire had contacted police she had seen earlier on the way home from school and told the officer about a frightening encounter she experienced near the laundry room which prompted her to peer inside. She came across a bald, bearded black man dressed in a red shirt. She approximated his age at 25. When he saw her he shouted at her to "Get out or Get away." Then she saw that man run away from the laundry room. She indicated that this took place around 5:00 p.m.
>
> 4.   Other officers working with a canine partner located the defendant, under the crawl space of a house, about a block or two away from the laundry room. Sgt. Hellman picked up Ms. Desire and her mother in his unmarked Taurus police car, to take her to a location where the defendant was being detained by the officers who had found him. Sgt. Hellman radioed ahead and learned that the defendant would be taken out of the patrol car and placed in a group of 6 to 7 individuals. It was that scene that he and Ms. Desire encountered when they drove up. The individuals were not in uniform and were both black and white males. The defendant was standing in the group is [sic] such a manner that handcuffs were not visible. As Ms. Desire saw the group, she said, "that's him" indicating the defendant as the person whom she had encountered earlier in the laundry room. This identification occurred around 6:30 p.m.
>
> The court finds that this procedure does not rise to the level of suggestibility found to be impermissible in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The show-up took place shortly after the commission of the offense. The defendant wore a shirt the same color as the individual whom she had seen in the laundry room. Ms. Desire's identification of the defendant was immediate and positive. This court finds that under the totality of the circumstances that there was no substantial likelihood of irreparable identification. *Macias v. State*, 673 So.2d 176 (Fla. 4th DCA 1996); *Shepherd v. State*, 732 So.2d 492 (Fla. 4th DCA 1999). The defendant's motion to suppress the identification is hereby denied.

(Id.:202-03).

18

The petitioner raised as an issue on direct appeal that the trial court had improperly denied his motion to suppress, and the Florida appellate court rejected the claim as without merit. See Lloyd v. State, 843 So.2d 364 (Fla. 3 DCA 2003).

While a show-up identification procedure, such as utilized by the police here, is inherently suggestive, Stovall v. Denno, 388 U.S. 293, 302 (1967), the evidence gives ample assurance that the reliability of the victim's identification was not outweighed by the suggestiveness of the "show-up."[11] The record shows that Desire was able to closely observe the petitioner while he was in her laundry room. Her description of the petitioner to the police, including his physical attributes and the clothing he was wearing was precise, detailed, and accurate. She was ultimately certain in identifying the petitioner when she appeared for the identification procedure approximately one hour after the crime. (DE#14:Ex.A:260-64). Based upon the record, the pretrial identification was reliable, even while finding the procedure potentially suggestive. Accordingly, under the totality of the circumstances, Neil v. Biggers, supra at 199-200, no due process violation occurred when the trial court denied the petitioner's motion to suppress and ruled that the pretrial identification of the petitioner was admissible. Manson v. Braithwaite, supra. Accordingly, the state court's rejection of this

---

[11]Similarly in Florida, a show-up is considered an inherently suggestive process, but it "is not invalid if it did not give rise to a substantial likelihood of irreparable misidentification under the totality of the circumstances." Blanco v. State, 452 So.2d 520, 524 (Fla.), cert. denied, 469 U.S. 1181 (1985). Accordingly, a prior out of court identification, if reliable, is admissible in Florida as substantive evidence of identity. See State v. Freber, 366 So.2d 426, 428 (Fla. 1978). The Florida Supreme Court in Freber noted that an identification made shortly after the crime is inherently more reliable than a later identification in court. State v. Freber, 366 So.2d 426, 428 (Fla. 1978). The court further stated that the fact that the witness could identify the respondent when the incident was still so fresh in her mind is of obvious probative value. Id

claim on direct appeal should therefore not be disturbed.[12] <u>See</u> 28
U.S.C.  2254(d); <u>Williams v. Taylor</u>, <u>supra</u>.

Moreover, the petitioner's argument that his right to counsel
was violated during the show-up is unexhausted and prospectively
procedurally barred from review in this habeas proceeding. This
precise legal argument was not raised on direct appeal where the
instant claim was exhausted. Under these circumstances, the state
forum has not ruled upon this the allegation that he was deprived
of counsel during the show-up. However, as the petitioner has
already pursued a direct appeal and Rule 3.850 proceeding, he cannot
return to the state forum to exhaust this claim. Consequently, this
court can bar the claim from review in this habeas proceeding.
Nothwithstanding, the claim is also meritless.

The Sixth Amendment right to counsel attaches at critical
stages of the criminal proceedings and operates to ensure the
accused's right to a fair trial. <u>United States v. Wade</u>, 388 U.S. 218
(1967). In <u>Kirby v. Illinois</u>, 406 U.S. 682 (1972), the Supreme Court
elaborated on the phrase "critical stage" by holding that the sixth
amendment attaches only at or after the time the adversary judicial
proceedings have been initiated. <u>Id</u>. at 688. The commencement of
criminal proceedings, whether by way of formal charge, preliminary
hearing, indictment, information, or arraignment, marks the start
of adversary judicial proceedings. <u>See</u> <u>id</u>. at 689. The purpose of
the sixth amendment is not to protect a suspect from his own candor,
but rather is to insure that he is not left to his own devices when
facing the "prosecutorial forces" of the state. <u>Moran v. Burbine</u>,

---

[12]The appellate court's decision affirming the petitioner's convictions on
direct appeal is entitled to deference under the AEDPA for purposes of subsequent
federal habeas corpus review, even though the state court did not issue an
opinion providing any discussion with respect to the claim. <u>Wright v. Secretary
for Dept. of Corrections</u>,278 F.3d 1245 (11 Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906
(2003).

475 U.S. 412, 430-31 (1986) (quoting Maine v. Moulton, 474 U.S. 159, 170 (1985), and Kirby, 406 U.S. at 689). Thus, "the Sixth Amendment right to counsel does not attach until after the initiation of formal charges." Moran, 475 U.S. at 432 (citing United States v. Gouveia, 467 U.S. 180, 187 (1984)). Like federal courts, Florida law also holds that adversary criminal proceedings arise, and the sixth amendment right to counsel attaches, after indictment or information. See Traylor v. State, 498 So.2d 1297 (Fla. 1st DCA 1986); see also, Fla.R.Cr.P. 3.140(a). Under the circumstances present here, it is evident that the petitioner's right to counsel was not violated at the pre-charge show-up because it was not a critical or crucial stage as no formal proceedings had actually begun. See Ibar v. State, 938 So.2d 451, 469-470 (Fla. 2006); Kirby v. Illinois, 406 U.S. at 688-91. (holding that a lineup conducted after a defendant's arrest, but before arraignment, indictment, or formal charges is merely investigatory in nature; therefore, the defendant is not entitled to presence of counsel at such a lineup). Consequently, even if the claim had been properly preserved and argued on direct appeal, the petitioner would not have been entitled to relief on this basis.

Finally, it is noted that in the process of reviewing the record to determine whether federal constitutional standards were violated in a habeas petitioner's underlying criminal case, the Court does not close its eyes to the reality of evidence of guilt fairly established in state court. Milton v. Wainwright, 407 U.S. 371, 377-78 (1971). See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). The defense at trial was one of misidentification. Defense counsel, during cross-examination of the state witnesses and by way of argument to the jury, vigorously challenged the identification obtained by the police, attempting to convince the jury that the state witnesses had misidentified the petitioner. As was the

21

prerogative of the jury, it rejected the defense presented, and instead believed the evidence admitted by the state and the testimony of the state witnesses. See Simmons v. United States, 390 U.S. 377, 384 (1968)("The danger that use of the [pretrial identification] technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error."). The reliability of the eyewitnesses' identification of the petitioner was a matter for the jury.[13]

In **claim 3**, the petitioner asserts that his constitutional rights were violated on the basis that the prosecution withheld exculpatory evidence. (DE#1:6; DE#2:20-25). According to the petitioner, the prosecution failed to produce the original pants found in the laundry room which contained items taken from the victims at the business. He claims that production of this item would have been essential as the defense could have used it at trial to show that the pants did not fit the petitioner.

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a Brady violation must demonstrate (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence

---

[13]The credibility and reliability of witness testimony is a question of fact to be determined by the jury. Mason v. Brathwaite, 432 U.S. 98, 116 (1977). While the testimony of these witnesses may contain questionable elements, "[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." Mason, 432 U.S. at 116. As credibility is a question of fact for a jury, the jury is "exclusively responsible for determining a witness' credibility." United States v. Strauss, 999 F.2d 692, 696 (2 Cir. 1993).

suppressed was material. <u>United States v. Severdija</u>, 790 F.2d 1556, 1558 (11 Cir. 1986). This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness. <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Stewart</u>, 820 F.2d 370, 374 (11 Cir. 1987), <u>quoting</u>, <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. <u>United States v. Alzate</u>, 47 F.3d 1103, 1109-1110 (11th Cir. 1995), <u>quoting</u>, <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985).

In this case, the petitioner cannot satisfy any prong under <u>Brady</u>. First, the pants were not favorable or exculpatory. To the contrary, even if the pants, and not a photograph thereof, had been introduced, this information would not have affected the outcome of the trial. Rather, it might have been more inculpatory than exculpatory because it would have affirmed Desire's testimony that the petitioner was seen hiding in the laundry room and exited wearing her brother's clothing. Likewise, the petitioner fails to demonstrate that the prosecution violated Florida law by destroying the pants or failing to make the pants available to the defense for inspection or testing. <u>See</u> <u>State v. Ritter</u>, 448 So.2d 512 (Fla. 5th DCA 1984)(State negligently allowed cocaine to be returned to DEA, rendering it unable at a later time to respond to defense's discovery motions). Moreover, even if the petitioner had attempted to establish the pants did not have fit him, there is no showing that this information would have affected the guilt phase portion of the trial. In fact, during closing argument, counsel strategically emphasized the fact that the pants were never introduced into evidence, and specifically stated:

> How easy it would have been to bring those pants into court, to hold them up and show you what size they are. Look at the inside label, what size they are, a boy's size 16 or a men's size 32. Without that evidence, that lack of evidence is reasonable doubt. They didn't do their job.

(DE#14:Ex.A:T.1193).

Thus, had the pants been introduced, it may have hurt rather than assisted the defense. At trial, without its introduction, the defense was able to capitalize upon the missing pants suggesting to the jury that the prosecution had failed to meet its burden and therefore there was a reasonable doubt that the petitioner did not commit the offenses.

Moreover, at the Rule 3.850 evidentiary hearing, counsel refuted any allegation that the prosecution concealed the existence of the pants from the defense or prevented him from inspecting or examining them during discovery. As can be seen from defense counsel's argument to the jury, it is clear that he strategically chose not to have the actual pants introduced, and focused instead on driving the defense point home during closing, thereby attempting to create reasonable doubt based on the absence of the pants. Federal law clearly holds that tactical or strategic choices like the one complained of here cannot support a collateral claim of ineffective assistance. McNeal v. Wainwright, 722 F.2d 674 (11 Cir. 1984); United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); see also United States v. Hughes, 635 F.2d 449, 452 11th Cir. 1981).

When the claim was raised in the Rule 3.850 proceeding, the trial court denied the claim following an evidentiary hearing, finding in pertinent part as follows:

> The alleged defects in counsel's performance, as specified by the pleadings, do not rise to the level of ineffective assistance of counsel and in this court's opinion, had counsel done what the petitioner claims he failed to do it would not have changed the outcome of the trial...
>
> This court finds, as to all other issues raised in the pleadings, competent and substantial evidence, from the testimony presented, that the actions of trial counsel were strategic or tactical decisions made in the best interests of a zealous defense of the petitioner, and/or were actions which were prohibited by law or rule and could not and should not have been done by a competent and ethical attorney.

(DE#14:Ex.D).

Under the totality of the circumstances present here, even if the prosecution had produced and counsel introduced the subject pants at trial, no showing has been made that it would have affected the guilt phase portion of the trial. Consequently, the rejection of the claim in the state forum was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

The petitioner further argues that the pants were essential to discredit or otherwise impeach the eyewitness testimony of Desire that the pants were worn by the petitioner, who apparently changed into Desire's brother's clothing while concealed in the laundry room. A different and more defense-friendly standard of materiality applies where the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony. Where either of those events has happened, the falsehood is deemed

to be material "if there is any reasonable likelihood that the false testimony <u>could have</u> affected the judgment of the jury." <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976) (emphasis added); <u>accord</u>, <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>Napue v. Illinois</u>, 360 U.S. 264, 271 (1959).  As the Supreme Court has held, this standard of materiality is equivalent to the <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967), "harmless beyond a reasonable doubt" standard.  <u>Bagley</u>, 473 U.S. at 679, n. 9. In this case, no such showing has been made. Desire testified regarding her recollection of the events, and was subject to vigorous cross-examination by the defense. Even if, as maintained by the petitioner, the pants containing the stolen jewelry did not fit him at the time of trial, no showing has been made that they did not fit, or were not linked to the petitioner at the time of the offenses. To the contrary, the petitioner was linked to the pants as he was concealed in the laundry room from where the wet pants were recovered. He was also observed fleeing the laundry room wearing pants belonging to Desire's brother. Consequently, this claim fails on the merits and  should not be disturbed here. <u>See Williams v. Taylor</u>, <u>supra</u>.

     In **claim 4**, the petitioner asserts that his due process rights were violated as there was insufficient evidence to support his convictions. (DE#1:6; DE#2:25-29). Specifically, the petitioner alleges that he was entitled to a judgment of acquittal as to the five counts of armed robbery and false imprisonment of the employees of the Community Redevelopment Corporation, in that the state failed to prove beyond a reasonable doubt that he was involved in the offenses given that none of the victims could positively identify the petitioner as one of the robbers.

     The standard for review of the sufficiency of the evidence on

a petition for federal habeas corpus relief is whether the evidence presented, viewed in a light most favorable to the state, would have permitted a rational trier of fact to find the petitioner guilty of the crimes charged beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979); <u>Smith v. White</u>, 815 F.2d 1401 (11 Cir. 1987). This familiar standard gives full play to the responsibility of the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[14] <u>See</u> <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1143 (11 Cir. 1987), <u>citing</u>, <u>Jackson v. Virginia</u>, 443 U.S. at 326. This standard of review is equally applicable to direct or circumstantial evidence.[15] <u>Jackson v. Virginia</u>, 443 U.S. at 320; <u>United States v. Peddle</u>, 821 F.2d 1521, 1525 (11 Cir. 1987). Federal courts must "give deferential review to state court decisions on sufficiency of the evidence claims." <u>Gomez v. Acevedo</u>, 106 F.3d 192, 194 (7 Cir.), <u>vacated on other grounds</u>, 522 U.S. 801 (1997).

Count 2 of the Information, the charge for armed robbery with a firearm, states in pertinent part as follows:

...DOUGLAS MONTGOMERY LLOYD, GREGORY TYRONE DORSETT, AND CHRISTOPHER KEITH McCOY on or about June 5, 1998, in the County

---

[14]In Florida, the test for the sufficiency of the evidence is whether a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Melendez v. State</u>, 498 So.2d 1258, 1261 (Fla. 1986) (citing <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979)). A defendant who challenges the sufficiency of the evidence admits not only the facts stated and the evidence adduced, but also every reasonable inference to be drawn from the evidence that is favorable to the state. <u>Gant v. State</u>, 640 So.2d 1180, 1181 (Fla. 4 DCA 1994). It is for the jury to decide what inferences are to be drawn from the facts. <u>Taylor v. State</u>, 583 So.2d 323, 328 (Fla. 1991). So long as there is sufficient evidence in the record to support such inferences, the appellate court will affirm the judgment. <u>Adkins v. Adkins</u>, 650 So.2d 61, 62 (Fla. 3 DCA 1994).

[15]Similarly in Florida, the <u>Jackson</u> standard for the sufficiency of the evidence is equally applicable to direct or circumstantial evidence. In Florida, proof based entirely on circumstantial evidence can be sufficient to sustain a conviction provided that other conditions established by Florida caselaw are satisfied. <u>See</u> <u>Orme v. State</u>, 677 So.2d 258, 258-62 (Fla. 1996) and cases cited therein.

and State aforesaid did unlawfully, by force, violence, assault or putting in fear, take certain property, to wit: a sum of U.S. coin or currency and/or Jewelry, said property being the subject of larceny, and of the value of more than Three hundred Dollars ($300.00), the property of BARRY GERBER, as owner or custodian, from the person or custody of BARRY GERBER with the intent to temporarily or permanently deprive the above-named owner(s) or custodian(s) of the said property, and in the course of committing said Robbery, carried a: Firearm, in violation of s. 812.13(2)(a) and s. 777.011, Fla. Stat., contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

(DE#14:Ex.A:145). Counts 3, 4, 6, and 8 provided the same language quoted above, but named as victims Joan Swartz, Maurice Barbakow, Eamon Toner, and Richard Koch, respectively. Section 812.13, Florida Statutes (West 2000), defines robbery as follows:

"Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

Here the evidence presented at trial included testimony from eyewitnesses who observed the petitioner running out of the business with his codefendants, in addition to, the testimony of Desire, who observed the petitioner hiding in the laundry room area of her home. As will be recalled, clothing worn by the petitioner were recovered from the laundry room and contained jewelry belonging to the victims of the business. Likewise, Desire was able to identify the clothing worn by the petitioner at the time of his arrest as belonging to her brother.

Contrary to the petitioner's assertion, all of the elements for robbery with a firearm were present in this case, see Fla.Stat. §812.13, and the evidence supported the petitioner's guilt as to the

crimes charged in Counts 2,3, 4, 6 and 8 under the theory of principals, which the jury had been properly instructed pursuant to Fla. Stat. §777.011.[16]

Likewise, there was sufficient evidence adduced at trial to support the petitioner's convictions for false imprisonment. Count 9 of the Information charged in pertinent part as follows:

> ...DOUGLAS MONTGOMERY LLOYD, GREGORY TYRONE DORSETT, AND CHRISTOPHER KEITH McCOY on or about JUNE 5, 1998, in the County and State aforesaid, without lawful authority did then and there forcibly by threat, or secretly confine, abduct, imprison or restrain another person, to wit: BARRY GERBER, against that person's will, and during the commission of such felony the defendant carried, displayed, used, threatened, or attempted to use a firearm, in violation of s. 787.02(2) and s. 775.087 and s. 777.011, Fla. Stat., contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

(DE#14:Ex.A:152-58). Counts 10, 11, 13, 14, and 15 provided the same language quoted above, but named as victims Maurice Barbakow, Eamon Toner, Allen Fried, and Richard Koch, respectively. Under Fla.Stat.. §787.02(1)(a), false imprisonment means "forcibly, by threat, or secretly confining, abducting, imprisoning, or restraining another person without lawful authority and against her or his will." In this case, the offense of false imprisonment was proved by the

---

[16]Florida law is clear that a person may be convicted of a criminal offense if he aided and abetted its principals. See Fla. Stat. §777.011 (aider or abettor may be convicted as principal even if not actually or constructively present at commission of offense); Voto v. State, 509 So.2d 1291, 1292-93 (Fla. 4 DCA 1987); Ramirez v. State, 371 So.2d 1063, 1065 (Fla. 3 DCA), cert. denied, 383 So.2d 1201 (Fla.1980). Thus, a person who participates in a crime is responsible for the acts of his accomplices, as long as the crime committed by the accomplice is within the participants' common design. Parker v. State, 458 So.2d 750 (Fla. 1984), cert. denied, 470 U.S. 1088 (1985). See also Jacobs v State, 396 So.2d 713, 717 (Fla. 1981)("One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime.")

evidence admitted at trial. The petitioner and others confined and restrained the victims at the business in order to steal money, jewelry, and the like from them and the business. Here, the confinement was not slight, inconsequential, and merely incidental to the robbery of the business. Accordingly, there was sufficient evidence adduced at trial that these victims were restrained against their will and thus relief must be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000).

The petitioner is apparently also alleging that his due process rights were violated as a result of the evidence admitted at trial, to-wit: (1) the show-up identification; (2) a photo of the pants with evidence of the crime rather than the actual pants; (3) testimony that the clothing petitioner was found wearing at the time of his arrest belonged to Desire's brother; and (4) the fingerprint of the petitioner found on the outside of the get-away vehicle. According to the petitioner, if this information had been excluded, there would have been insufficient evidence to support his convictions. There is nothing of record to support an argument that even if the petitioner had sought to exclude this information, that the court would have granted the request, as there is on basis in law to support their exclusion. Likewise, no showing has been made that the challenged evidence was constitutionally insufficient to support the convictions.

It is beyond dispute that the conviction of a defendant of a crime with which he was not charged and, accordingly, for which he was not lawfully tried, violates the constitutional requirements of the federal and state constitutions that an accused be informed of the accusation against him. See generally Stirone v. United States, 361 U.S. 212 (1960); Cole v. Arkansas, 333 U.S. 196 (1948); Markham v. United States, 160 U.S. 319 (1895). See also Jacob v. State, 651

So.2d 147 (Fla. 2 DCA 1995); <u>Rose v. State</u>, 507 So.2d 630 (Fla. 5 DCA 1987); <u>Salerno v. State</u>, 347 So.2d 659 (Fla. 4 DCA 1977). It is apparent from review of the record as a whole in this case that the petitioner's due process rights were not violated in that he had not been mislead by the information so that the preparation of his defense was compromised. Under these circumstances, the state court's rejection of the claim was not contrary to nor an unreasonable application of federal constitutional principles. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim 5**, the petitioner asserts that his constitutional rights were violated on the basis that the trial judge was biased against the petitioner. (DE#1:6a; DE#2:29-32).

The petitioner argues here, as he did in his Rule 3.850 motion, that the trial court interfered with the conduct of the trial, as well as, the conduct of the Rule 3.850 proceeding, and therefore abandoned its impartiality. It is axiomatic that the due process guarantee of a fair and impartial trial judge prohibits any bias or advocacy by the trial judge during the course of a trial. <u>See</u> <u>Taylor v. Hayes</u>, 418 U.S. 488, 501-04 (1974). However, it is well settled that a trial judge is not relegated to complete silence and inaction during the course  of a criminal jury trial. <u>See</u> <u>United States v. Wright</u>, 392 F.3d 1269, 1274 (11th Cir. 2004), <u>cert. den'd</u>, 544 U.S. 968 (2005), <u>quoting</u>, <u>United States v. Cox</u>, 664 F.2d 257, 259 (11th Cir. 1981). However, a trial judge abuses its authority when it "'abandons [its] proper role and assumes that of an advocate.'" <u>United States v. Wright</u>, 392 F.3d at 1274; <u>United States v. Harriston</u>, 329 F.3d 779,790 (11th Cir. 2003); <u>see also</u>, <u>Fed.R.Evid.</u> 614; <u>Fla.Stat.</u> §90.615. In this regard, the Eleventh Circuit has explained that:

> [t]he trial judge has a duty to conduct the
> trial carefully, patiently, and impartially. He
> must be above even the appearance of being
> partial to the prosecution. On the other hand,
> a federal judge is not a mere moderator of
> proceedings. He is a common law judge having
> that authority historically exercised by judges
> in the common law process. He may comment on
> the evidence, may question witnesses and elicit
> facts not yet adduced or clarify those
> presented, and may maintain the pace of the
> trial by interrupting or cutting off counsel as
> a matter of discretion.

Wright, 392 F.3d at 1274, quoting, Moore v. United States, 598 F.2d
439, 442 (5th Cir. 1979).

A trial judge's participation in a trial oversteps the bounds
of propriety and deprives the parties of a fair trial only if it
appears from the record that the court has departed from neutrality
or has expressed bias or prejudice. See United States v. Wright, 392
F.2d 1269, 1274 (11th Ci. 2004); United States v. Parker, 241 F.3d
1114, 1119 (9 Cir. 2001)(holding that trial judge's substantial
participation in proceedings, in asking questions on behalf of
prosecution when prosecution asked leading or otherwise
objectionable questions, did not deprive defendant of fair trial,
because judge's conduct did not show actual bias or project
appearance of advocacy or partiality, and judge instructed jury not
to infer any opinion from its questioning). Put another way,
comments made by a judge will cause reversal only when they "excite
a prejudice which would preclude a fair and dispassionate
consideration of the evidence." Brough v. Imperial Sterling, Ltd.,
297 F.3d 1172, 1181 (11th Cir. 2002).

In this case, there was no error or prejudice to the
petitioner. Nothing in the trial court's comments strayed from

32

neutrality. <u>Moore</u>, 598 F.2d at 442. The trial judge did not become
an advocate for the prosecutor by sustaining objections during the
Rule 3.850 evidentiary hearing, nor by its interruption of defense
counsel during opening statements or closing arguments, or its
questioning of certain witnesses. None of the instances cited by the
petitioner in his Rule 3.850 motion, at pp.5m-5o demonstrate actual
bias by the trial court. Rather, it is evident from the record as
a whole that the court was merely attempting to ensure that all
pertinent evidence was presented to the jury at trial, that the
trial was conducted in an orderly and lawful manner,[17] and that
relevant evidence was adduced at the Rule 3.850 proceeding. <u>See</u> <u>cf</u>.,
<u>United States v. Campino</u>, 890 F.2d 588, 592 (2 Cir. 1989)(holding
that trial judge's suggestion during suppression hearing that
government should call another witness as to time at which search
was conducted did not show predisposition of judge toward
government's position in that trial judge was merely seeking
additional evidence to resolve conflicting testimony and what he
considered to be a close issue of credibility), <u>cert</u>. <u>denied</u>, 498
U.S. 866 (1990).

The record in this case shows that the trial judge's
intervention did not deprive the petitioner of a fair trial. There
is no indication whatever of actual bias or the appearance of
advocacy or partiality. Under the circumstances presented here, the
denial of this claim was not in conflict with clearly established
federal law or based on an unreasonable determination of the facts
in light of the evidence presented in the state court proceeding.
Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>See</u>

---

[17]No showing has been made that the court was biased towards the petitioner
when it released a juror from the panel after he/she failed to show up for court.
To the contrary, the court was, in fact, protecting the petitioner's
constitutional rights by ensuring that he had a lawful jury panel to hear the
evidence.

<u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

In **claim 6**, the petitioner asserts that his constitutional rights were violated on the basis that his convictions were obtained by prosecutorial misconduct. (DE#1:6b; DE#2:33-36). To the extent the arguments raised herein are a mere reiteration of the arguments of prosecutorial misconduct for purportedly suppressing the pants seized from the laundry room, as discussed in relation to claim three above, the claim should be denied for the reasons expressed therein. The petitioner also appears to argue in support of this claim that the prosecution engaged in prosecutorial misconduct throughout the trial by mentioning the deaths of codefendant Jason Woodruff and victim Gerald Nevaloff, as well as, the terminal cancer of victim Maurice Barbakow, which was irrelevant and highly prejudicial as it invoked sympathy from the jury. (DE#1:6b).

The claim was raised in the Rule 3.850 motion and denied by the court on the finding the substantive issue underlying the ineffective assistance of counsel claims were without merit. (DE#14:Ex.D). That denial was subsequently affirmed on appeal. <u>Smith v. State</u>, 973 So.2d 619 (Fla. 3 DCA 2008).

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-45 (1974); <u>Hall v. Wainwright</u>, 733 F.2d 766, 733 (11 Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, <u>Hance v. Zant</u>, 696 F.2d 940 (11 Cir.), <u>cert.</u> <u>den'd</u>, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reason-able probability that, in the absence of the improper remarks, the

34

outcome of the trial would have been different." <u>Williams v. Weldon</u>, 826 F.2d 1018, 1023 (11 Cir.), <u>cert. den'd</u>, 485 U.S. 964 (1988).

The Eleventh Circuit has held in the context of federal criminal prosecutions that prosecutorial conduct requires a new trial only if the remarks 1) were improper and 2) prejudiced the defendant's substantive rights. <u>United States v. Cannon</u>, 41 F.3d 1462, 1466 (11 Cir. 1995); <u>United States v. Cole</u>, 755 F.2d 748, 767 (11 Cir. 1985). The remarks must be reviewed in context and the probable impact upon the jury must be assessed. <u>United States v. Cannon</u>, <u>supra</u> at 1469; <u>United States v. Stefan</u>, 784 F.2d 1093, 1100 (11 Cir. 1986).

The record reveals that, contrary to the petitioner's allegation, when viewed in context, the comments were in fact a summary of the evidence adduced at trial and a response to the defense's opening and theory of the case. Even if the comments may have been inartful, and perhaps overreaching, it did not deny the petitioner due process.[18] Thus, as correctly found by the trial

---

[18]The petitioner also appears to argue that the prosecution's use of the phrase "we know" imputed his personal opinion and knowledge concerning the petitioner's guilt. During a trial, counsel have a duty to refrain from commenting on their personal views on a defendant's guilt and the evidence. <u>United States v. Young</u>, 470 U.S. 1, 7-9 (1985). A prosecutor's comments during a closing argument are evaluated to determine whether the comments so unfairly affected the trial as to deny the defendant due process, <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986), when considered "in the context of the entire trial in light of any curative instructions." <u>United States v. Abraham</u>, 386 F.3d 1033, 1036 (11th Cir. 2004) (per curiam) (quotation marks and citation omitted). Due process is denied "when there is a reasonable probability," or "a probability sufficient to undermine confidence in the outcome," that, but for the improper remarks, "the outcome of the proceeding would have been different." <u>United States v. Eyster</u>, 948 F.2d 1196, 1206-07 (11th Cir. 1991) (citations and internal punctuation omitted). The prosecutor's comments must both (1) be improper and (2) "prejudicially affect the substantial rights of the defendant." <u>United States v. Thompson</u>, 422 F.3d 1285, 1297 (11th Cir. 2005). A prosecutor's comments constitute improper "vouching" if they are "based on the government's reputation or allude to evidence not formally before the jury." <u>Eyster</u>, 948 F.2d at 1206. Although improper vouching is grounds for reversal, it may be cured if the remarks are not "substantially prejudicial" and any lingering prejudice is remedied by a careful cautionary instruction. <u>United States v. Sarmiento</u>, 744

court in the Rule 3.850 proceeding, the comment was proper and, even if improper, it was not sufficiently prejudicial to warrant reversal of the proceedings, especially in light of the evidence implicating the petitioner in the offense. See Greaves v. State, 821 So.2d 1079 (Fla. 4 DCA 2002).

The challenged remarks, under the facts of this case, were fair comment on the evidence actually adduced at trial and did not render the trial fundamentally unfair. Moreover, even if the prosecutor's objectionable comments could possibly be viewed as having the potential to prejudice the jury, the comments did not impair the fundamental fairness of the petitioner's trial and did not contribute to the conviction, especially in light of the trial court's repeated instructions to the jury to rely on the evidence presented and not the comments of counsel when arriving at its verdict. It is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987). Since the prosecutor's comments did not fundamentally taint the trial and contribute to the convictions, the trial court's failure to grant a mistrial was not improper. See Ford v. State, 2001 WL 1044912, *3 (Fla. 2001)(holding that a mistrial based on prosecutorial comments is appropriate only where a statement is so prejudicial that it vitiates the entire trial).

Thus, counsel was not constitutionally ineffective in failing to object to the comments, or failing to move for a mistrial based on the above-mentioned remarks by the prosecutor. It would have been

---

F.2d 755, 762-65 (11th Cir. 1984). In this case, the comments were not substantially prejudicial nor was the outcome of the trial affected by the prosecution's comments. Moreover, the court instructed the jury that the prosecution's comments are not evidence. Consequently, any error was cured by the court's instructions. It is presumed that the jury followed these instructions.

futile for counsel to have done so, given the "wide latitude" accorded the parties in making closing arguments. Florida law affords wide latitude to counsel in closing arguments. See Breedlove v. State, 413 So.2d 1, 8 (Fla. 1982). See also Ford v. State, 2001 WL 1044912, *3 (Fla. 2001) (holding that a mistrial based on prosecutorial comments is appropriate only where a statement is so prejudicial that it vitiates the entire trial). Under the totality of the circumstances, including the strength of the evidence of the petitioner's guilt, it is apparent that the prosecutor's statements were at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict).

Accordingly, the state trial court's denial of the ineffective assistance of trial counsel claim raised in this federal petition, which ruling was affirmed by the state appellate court did not constitute a decision that was contrary to or an unreasonable application of Strickland. The petitioner is, therefore, is not entitled to habeas relief on this ground. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

In **claim 7,** the petitioner asserts that he was denied effective assistance of counsel for numerous, specified reasons. In order to prevail as to those claims, the petitioner must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler

v. United States, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-204 (2001).

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." Hardwick v. Crosby, 320 F.3d 1127, 1161 (11 Cir. 2003), citing Chandler v. United States, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. den'd,___ U.S. ___, 123 S.Ct. 70 (2002), quoting, Strickland v. Washington, supra at 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992).

In **claim 7.1**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to properly and sufficiently advise the petitioner of the evidence against him, the likelihood of conviction at trial, the state's burden of proof, and the consequences of rejecting the state's plea offer which caused the petitioner to make a not knowing and involuntary rejection of the prosecution's plea. (DE#1:6b).

The Sixth Amendment right to counsel includes the right to competent advice regarding the choice to accept a plea bargain or go to trial. Turner v. Tennessee, 664 F.Supp. 1113, 1120 (M.D. Tenn.), aff'd, 858 F.2d 1201 (6 Cir. 1988), vacated on other grounds, 492 U.S. 902 (1989), reinstated, 726 F.Supp. 1113 (M.D. Tenn. 1989), aff'd, 940 F.2d 1000 (1991), cert.denied, 502 U.S. 1050 (1992); accord, Johnson v. Duckworth, 793 F.2d 898, 900-02 (7 Cir.), cert.denied, 479 U.S. 937 (1986)(criminal defendant has right to effective assistance of counsel in deciding whether to accept or reject proposed plea agreement); United State ex rel. Caruso v. Zelinsky, 689 F.2d 435, 438 (3 Cir. 1982)(decision to reject plea agreement is critical stage at which right to effective assistance attaches); Beckham v. Wainwright, 639 F.2d 262, 267 (5 Cir. 1991)(incompetent advice to withdraw negotiated plea and proceed to trial violated defendant's Sixth Amendment right).

A lawyer is obligated to keep the client informed of important developments, including any plea agreement offered by the government. Counsel's failure to do so is ineffective assistance. Diaz v. United States, 930 F.2d 832, 834 (11 Cir. 1991), citing, Johnson v. Duckworth, supra; see also, Pham v. United States, 317 F.3d 178, 182-83 (2d Cir. 2003)(defense counsel's failure to inform defendant of government's "global plea offer" constituted ineffective assistance); Jones v. Wood, 114 F.3d 1002, 1012 (9th

Cir. 1997)(failure to inform client of plea bargain may have risen to the level of ineffective assistance of counsel if petitioner had shown prejudice); United States v. Rodriguez, 929 F.2d 747, 752 (1st Cir. 1991)("Ordinarily, counsel's failure to inform client of plea agreement constitutes ineffective assistance of counsel."); United States v. Zelinsky, 689 F.2d 435, 438 (3rd Cir. 1982)("It would seem that, in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards.").

In reviewing ineffective assistance of counsel with respect to guilty pleas, the United States Supreme Court has applied the "objective standard of reasonableness" by considering whether counsel's representation was "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56-57 (1985)(applying Strickland requirements to review for ineffective assistance of counsel with respect to guilty pleas (citations omitted)). With regard to the prejudice prong, the Court held that the inquiry focused on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. If it is found that counsel failed to inform his client of the government's plea offer, the remedy is for the District Court to ensure that the government reinstates its original plea offer. United States v. Baylock, 29 F.3d 1458, 1468 (9 Cir. 1994).

However, as with other claims of ineffective assistance, a defendant who claims that counsel performed ineffectively in connection with a decision to reject a plea offer must demonstrate that he suffered prejudice to prevail. Turner, supra, 858 F.2d at 1201. In the specific context of a claim that counsel rendered ineffective assistance in connection with a rejected plea offer, a

petitioner seeking to establish prejudice must prove that there was reasonable probability that absent counsel's error she would have accepted the offer. Diaz, 930 F.2d at 835; Jones v. Wood, 114 F.3d 1002 (9 Cir. 1997), and cases cited at 1012.

An evidentiary hearing was held on this claim in the state forum. The petitioner's trial counsel, Alan Soven, Esquire, a seasoned criminal defense attorney, explained that plea discussions began early in the case and continued through trial. (DE#14:Ex.D:T.15,45,53). According to Attorney Soven, the prosecution had extended a 30-year plea offer several times up to the commencement of trial, but the petitioner rejected the offer, countering that he wanted a 10 or 12 year plea. (Id.:18). Attorney Soven explained to the petitioner that he faced up to life in prison if convicted and that the prosecution would not go below the 30-year offer. (Id.:18,56). In conveying the plea, counsel advised the petitioner that there was a strong likelihood that if he proceeded to trial, he would be convicted and his sentence enhanced. (Id.:18,47,52-54). Despite this advice, the petitioner repeatedly rejected the offers. (Id.).

Attorney Soven also testified that during these discussions he explained the prosecution's evidence, which included the petitioner's fingerprint on the getaway car, Desire's identification and observation of the petitioner in her laundry room, wearing her brother's clothes, and the ensuing discovery of some of the victims' belongings in that laundry room, as well as, the observation of a police officer who saw the petitioner running from the getaway car. (Id.:19-21). Moreover, Attorney Soven also discussed the defense strategy which included discrediting Desire's testimony at trial.

The claim was tacitly rejected in the state forum on the basis

41

that no deficient performance had been established, in that counsel was "competent, effective, and vigorous." (DE#14:Ex.D). Given the evidence adduced at the Rule 3.850 hearing, which the state court credited, it appears that the petitioner was properly counseled and he knowingly and voluntarily rejected the state's continual 30-year plea offer, after thorough consultation regarding the maximum sentence exposure, the strength of the prosecution's evidence, and the likelihood of success at trial. Consequently, the state court's rejection of this claim was in accordance with the applicable federal constitutional principles and should not be disturbed here. Williams v. Taylor, supra.

In **claim 7.2**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to present evidence and argue the correct legal principle in support of the petitioner's motion to suppress the identification which he maintains was obtained by an impermissible, suggestive show-up procedure. (DE#1:6b-c). To the extent this is a mere reiteration of the arguments raised in relation to claim two above, it should be denied for the reasons expressed therein.

As will be recalled, the petitioner claims that the show-up identification was unlawful and in violation of his right to counsel. However, as discussed previously, even if counsel had alternatively argued at the suppression proceedings that the show-up was unlawful for the reasons set forth by the petitioner in this habeas proceeding, no showing has been made that the court would have granted suppression of the show-up. To the contrary, as previously narrated in relation to claim two, the claim fails on the merits as the show-up did not violate the petitioner's constitutional rights. Consequently, the summary denial of this claim in the Rule 3.850 proceeding was proper and should not be

disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim 7.3**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to investigate and review available, recent research on eyewitness identifications and to procure an expert in the field of eyewitness identification reliability. (DE#1:6c). In his Rule 3.850, the petitioner maintained that an expert could have compiled data attacking the reliability of eyewitness testimony, based on factors such as "the limited time period in which they viewed defendant, stress, the violence of the situation, selectivity, assimilation," as well as, the surrounding circumstances under which Desire identified the petitioner. (DE#14:Ex.A:40).

The Supreme Court has long recognized the inherently suspect qualities of eyewitness identification evidence, finding it notoriously unreliable. <u>See</u> <u>Watkins v. Sowders</u>, 449 U.S. 341, 350 (1981)(Brennan, J., dissenting); <u>Manson v. Brathwaite</u>, 432 U.S. 98, 111-112 (1977); <u>United States v. Wade</u>, 388 U.S. 218, 228 (1967). Accordingly, to guard against the dangers inherent in eyewitness identification, the Supreme Court has held inadmissible identification evidence tainted by suggestive confrontation procedures and lacking adequate indicia of reliability. <u>Manson v. Brathwaite</u>, 432 U.S. at 114.

As previously discussed herein, defense counsel actively pursued a pretrial motion to suppress all testimony regarding the pretrial identifications, alleging that the suggestive nature of show-up led to a substantial likelihood of misidentification. The court was aware of the unreliability of a showup identification as demonstrated by its reliance on <u>Neil v. Biggers</u>, <u>supra</u> in denying the suppression motion. Counsel was unsuccessful on the motion,

however, counsel went on to fully and forcefully cross-examine the Desire and Detective Colangelo regarding their identification of the petitioner.  Moreover, review of counsel's closing argument at trial reveals that he again vigorously challenged the identification testimony during closing argument. At the Rule 3.850 hearing, Attorney Soven explained that the defense strategy at trial was to attack the credibility of Desire's identification. Attorney Soven testified that he was familiar with the reliability of eyewitness identifications, having previously gathered literature on the issue. (DE#14:Ex.D:T.30).

Under Florida law, it is clear that a trial court has wide discretion concerning the admissibility of evidence and the range of subjects about which an expert can testify. Jent v. State, 408 So.2d 1024 (Fla.1981), cert. denied, 457 U.S. 1111 (1982); Johnson v. State, 393 So.2d 1069 (Fla. 1980), cert. denied, 454 U.S. 882 (1981). Likewise, the Florida Supreme Court has held that expert testimony should be excluded when the facts testified to are of such nature as not to require any special knowledge or experience in order for the jury to form its conclusions. See Johnson v. State, 438 So.2d 774 (Fla. 1983). In so ruling, the court concluded that a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony. Johnson, 438 So.2d at 777 (citation omitted). Under these circumstances, even if counsel had retained an expert, no showing has been made in the state forum or in this habeas proceeding that the trial court would have permitted his testimony. There is nothing of record to suggest that the facts testified to at trial were so complex that it would have required testimony from an expert so that the jury could render its verdict.

44

Moreover, there is no reasonable probability that had any such expert witness been called at trial, the outcome of the trial would have been different. Accordingly, counsel's performance was not constitutionally ineffective in that the petitioner has not demonstrated that he was prejudiced by the alleged deficiency. See Jones v. Smith, 772 F.2d 668, 674 (11 Cir. 1985)(holding that not ineffective assistance of counsel to fail to present expert to testify as to unreliability of eyewitness testimony where likelihood of misidentification was fully explored on cross-examination), cert. denied, 474 U.S. 1073 (1986). See also Rose v. State, 617 So.2d 291, 297 (Fla. 1993)(holding that defense counsel was not ineffective for failing to obtain expert in eyewitness identification when, instead, he pointed out inconsistencies between the eyewitnesses' testimony as well as differences in the trial testimony of each witness and his or her earlier statements).

Under the totality of the circumstances present here, the state court's rejection of this claim in the Rule 3.850 proceeding and the affirmance of that denial on appeal was not contrary to applicable federal constitutional principles and should not be disturbed here. Williams v. Taylor, supra

In **claim 7.4**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to present evidence in support of the defense theory asserted during opening statements. (DE#1:6c).

During opening statements, defense counsel indicated that the evidence would establish that the petitioner was not involved in the offenses. (DE#14:Ex.A:T.275-78). The defense stated that the evidence would show that Desire's identification was faulty and brief, and that the show-up was unreliable.

45

In the Rule 3.850 motion, the petitioner maintained that counsel never substantiated his opening statements nor did he cross-examine the witnesses in order to support the defense theory. (DE#14:Ex.D-Rule3.850 Motion:5K). This claim, however, is clearly refuted by the record which reveals that counsel did, in fact, vigorously cross-examine the eyewitnesses, attempting to discredit their testimony. Contrary to the petitioner's assertions, counsel did in fact raise during opening and again in closing argument the reason that the petitioner was hiding under a house was because he feared being implicated in the offenses. To the extent the petitioner faults counsel for failing to procure witnesses to testify regarding the petitioner's fears, the petitioner does not identify which witnesses would have testified in this regard. Moreover, even if they had testified as proffered, no showing has been made that this would have altered the outcome of the trial. In other words, the petitioner cannot establish that this testimony would have resulted in an acquittal. Consequently, no prejudice pursuant to <u>Strickland</u> has been established. Thus, the state courts rejection of the claim was in accordance with federal constitutional principles and should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim 7.5**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to object and move for a mistrial at each incident of judicial misconduct. (DE#1:6c). To the extent the petitioner seeks to argue that the court's bias is demonstrated by his rulings and interjections throughout the trial, as previously discussed in relation to claim 5 above, this claim fails on the merits for the reasons expressed therein.

Moreover, under Florida law, "a mistrial should only be

declared if 'the error is so prejudicial and fundamental that it denies the accused a fair trial.'" Lubin v. State, 754 So.2d 141, 143 (Fla. 4th DCA 2000) (citation omitted). No such showing has been made here. Although petitioner cites in his state Rule 3.850 motion numerous instances where the judge made rulings and/or interjected itself in the proceedings, none of the references (DE#14:Ex.D:Mot-5m-5p), either individually or cumulatively rise to the level of a deprivation of the petitioner's right to a fair trial. Moreover, at the Rule 3.850 hearing, Attorney Soven testified that he never felt his trial strategy or representation of the petitioner was hindered or restricted by the judge's rulings or comments. (DE#14:Ex.D:Eivd.Hg.Trans:66). Consequently, absent a showing of a denial of a fair trial, the petitioner cannot establish prejudice pursuant to Strickland arising from counsel's failure to seek a mistrial for the plethora of reasons postured by the petitioner in this habeas proceeding. There is no duty to raise issues which have little or no chance of success. See generally, Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues).

Further, any possible prejudice was clearly mitigated by trial counsel's extremely thorough and vigorous cross-examination of the witnesses, attempting to demonstrate to the jury that they were not credible. Moreover, under the totality of the circumstances, including the strength of the evidence of the petitioner's guilt, it is apparent that the complained of comments were at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and

injurious effect or influence in determining the jury's verdict).
Accordingly, even if counsel's performance could be found deficient
for failing to object to any or all of the proffered interjections,
the petitioner nevertheless suffered no prejudice from the alleged
deficiencies in that he was not deprived of a fundamentally fair
trial as a result of the challenged testimony. He has, therefore,
failed to demonstrate that he received ineffective assistance of
counsel. Strickland, supra.

In **claim 7.6**, the petitioner asserts that he was denied
effective assistance of counsel, where his lawyer failed to file a
motion in limine to preclude Desire from testifying regarding the
clothing the petitioner was wearing at the time of his arrest, and
for failing to object at trial to its introduction on the basis that
the prosecution failed to lay the proper foundation for the
testimony. (DE#1:6c).

Review of the record reveals that counsel vigorously cross-
examined Desire regarding her identity of the petitioner and her
recollection of the events. (DE#14:Ex.A:T.564-599). During closing
argument, counsel emphasized that despite Desire's testimony on
direct that the petitioner was wearing her brother's clothing, it
was possible that the clothing, which were common and had no unique
markings, could in fact, have belonged to anyone, including the
petitioner. (DE#14:Ex.A:T.1194).

Under the totality of the circumstances present here, no
showing has been made either in the state forum where the subject
claim was exhausted, nor in this habeas proceeding, that had counsel
pursued a motion in limine or otherwise objected to Desire's
testimony, that such a motion or objection would have been granted
or sustained. Consequently, the petitioner cannot establish

48

prejudice pursuant to <u>Strickland</u> and is entitled to no relief on this claim. The state courts rejection of this claim should therefore not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim 7.7**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to act upon the state's <u>Brady</u> violation where the prosecution introduced at trial photographs of pants that were recovered from a laundry room containing evidence from the victims of the crimes. (DE#1:6c). This claim is a mere reiteration of claim three above and should be denied for the reasons expressed therein. No <u>Brady</u> violation has been demonstrated. Moreover, counsel testified at the Rule 3.850 hearing that the subject evidence and all discovery had been provided or made available to him prior to trial, and that items taken during the robbery were found in the pockets of the pants recovered from the laundry room. (DE#14:Ex.D:3.850 Hearing Trans:41-42). In fact, during closing argument, the defense suggested that because the state had failed to preserve the pants found in the laundry room, there was reasonable doubt regarding whether these pants, in fact, belonged to the petitioner. (DE#14:Ex.D:T.1130-31). Consequently, no prejudice pursuant to <u>Strickland</u> has been established arising from counsel's failure to pursue this claim. The state courts rejection of this claim comports with applicable federal constitutional principles and should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim 7.8**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to procure an expert to examine the fingerprint evidence and consult with the defense at trial. (DE#1:6c). The petitioner appears to also argue here, as he did in the state forum that his lawyer improperly failed to challenge the state's fingerprint witness, Robert Williams, and

move to prohibit his testimony as an unqualified expert and scientifically unreliable evidence. The petitioner also alleges that his lawyer should have obtained an independent fingerprint expert as a defense witness for the purposes of examining the latent print and challenging the qualifications of the state fingerprint expert. As indicated above, the petitioner's fingerprint was found on the window of the getaway car.

The trial transcript indicates that the state's expert witness, a certified latent fingerprint examiner, was well-qualified in that he had close to 29 years experience in the field of latent fingerprint examination; he had been trained with the FBI and worked there for ten years before working with the Miami-Dade Police Department for an additional 19 years. (T.613). The state expert witness testified in detail regarding the procedures he used to determine whether a latent print matches a known print before he concluded that the print he obtained from the petitioner matched the latent print. (T.614-625). Review of defense counsel's cross-examination of the expert witness indicates that defense counsel was apparently versed in fingerprint identification procedures, and he thoroughly questioned the witness about the fingerprint procedures applied in this case. (T.625-640). Defense counsel forcefully questioned the state witness regarding how many characteristics he found in this case when comparing the latent print discovered on the window of the vehicle with that of the petitioner's fingerprints. (T.641-45). Counsel further attacked the witness' credentials, including the fact that he never received a college degree, had never testified in court as an expert for the FBI, nor for any other court outside Miami-Dade County. (T.950-91). It is clear from review of the record as a whole that there was no basis to challenge the qualifications of the state's expert witness.

Moreover, during the Rule 3.850 hearing, Attorney Soven explained that he thoroughly researched the issue of the fingerprint and was prepared to cross examine the expert in this regard. According to counsel, he attacked the expert's qualifications, background, including the fact that although the witness prided himself on having worked for the FBI for a decade, he never testified for them as an expert. (DE#14:Ex.D:Rule.3850Trans.:35). Further, counsel was knowledgeable about techniques regarding latent prints and skillfully cross-examined the state expert witness, attempting to discredit his conclusion that the subject fingerprint was in fact the petitioner's. Accordingly, counsel's decision not to challenge the state's witness and/or present a defense expert witness was a question of trial strategy that is unchallengeable in this federal proceeding.[19]

Moreover, even if counsel's performance could be deemed deficient as alleged, the petitioner has not demonstrated that the neglect or omission by counsel caused him to suffer prejudice as a result. In other words, there is no indication that the results of the proceeding would have been different had counsel had challenged the expert's qualifications and/or retained a defense expert. Strickland, 466 U.S. at 694. In this habeas corpus proceeding, the petitioner has presented no evidence whatever that the fingerprint found on the vehicle window was not his, which he apparently cannot do. The lack of a specific, affirmative showing of any exculpatory evidence leaves the petitioner's claim purely speculative and well

---

[19]Decisions whether to call a particular witness are generally questions of trial strategy. See Dorsey v. Chapman, 262 F.3d 1181, 1186 (11 Cir. 2001)(holding that petitioner did not establish ineffective assistance based on defense counsel's failure to call expert witness for the defense in that counsel's decision to not call the expert witness was not so patently unreasonable a strategic decision that no competent attorney would have chosen the strategy). See also United States v. Costa, 691 F.2d 1358, 1364 (11 Cir. 1982).

short of the prejudice required by Strickland. Speculation about
what an expert could have said is not enough to establish prejudice.
Grisby v. Blodgett, 130 F.3d 365, 373 (9 Cir. 1997). Moreover, the
primary evidence of guilt relating to the robbery was the testimony
of the eyewitnesses and not the fingerprint evidence. Since defense
counsel was able to support the defense theory of misidentification
through cross-examination of the state witnesses and argument, by
not calling defense witnesses, he was able to preserve the right to
first and last closing argument. Accordingly, counsel's performance
did not fall below the level of a reasonably competent attorney
under Strickland, supra. Consequently, the state courts rejection
of the claim should not be disturbed here. Williams v. Taylor,
supra.

In **claim 7.9**, the petitioner asserts that he was denied
effective assistance of counsel, where his lawyer failed to object
and move to exclude opinion testimony of the prosecution's
fingerprint examiner where the witness was never tendered nor
accepted as an expert in that field. (DE#1:6c). This claim is
clearly refuted by the record. Moreover, as previously discussed in
relation to claim 7.8, the fingerprint witness was more than
qualified to testify regarding the latent print lifted from the
getaway vehicle which matched the petitioner's. Consequently, no
showing has been made in the state forum nor in this habeas
proceeding that any attempt to object or otherwise exclude this
testimony would have succeeded. Therefore, the petitioner cannot
satisfy the prejudice prong of Strickland and is thus entitled to
no relief on this claim.

In **claim 7.10**, the petitioner asserts that he was denied
effective assistance of counsel, where his lawyer failed to object
and move for a mistrial at each incident of prosecutorial

misconduct. (DE#1:6c). This is a mere reiteration of the arguments raised in relation to claim six above and should be denied for the reasons expressed therein. Moreover, no prejudice has been established arising from counsel's failure to object to the prosecutor's closing argument. Consequently, the petitioner cannot satisfy the prejudice prong of <u>Strickland</u> and is entitled to no relief on this claim.

In **claim 7.11**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to object and move for a mistrial when codefendant's counsel during closing argument made a statement directly inferring the petitioner's guilt. (DE#1:6c).

Specifically, the objected to comment by codefendant's counsel during closing argument was as follows:

> ...The next part I had suggested to you that the evidence showed that when the cards collided, Gregory Dorsett ran to the businesses for help. Okay? He ran directly in there for help.
>
> The prosecutor seems to think that's ridiculous. Why would he do that? Well, here is State's Exhibit No. 3. All right? It depicts the blue Toyota, Officer Colangelo's car.
>
> This is the right side of the car. Gregory is the driver....
>
> Logic would seem to indicate if this man truly wanted to get away, he would just step out of the car and make a run for it heading in a Southwesterly direction; in other words, through this field, over these fences, into somebody's house, maybe underneath somebody's crawl space, change his clothes, do whatever he wants.

(T.874-87).

The petitioner says this closing argument inferred guilt on him. If it did, however, the inference was marginal at worst. The

argument did not specify that it was the petitioner. Although there is a similarity between counsel's summary of events and the petitioner's theory or defense, it did not infer guilt on the petitioner. Even if this Court were to assume that guilt was inferred, at best, the inference was marginal given the evidence adduced at trial which amply supported the petitioner's convictions. Consequently, even if counsel had moved for a mistrial based on this testimony, no showing has been made that this motion would have been granted. To the contrary, the court may have given a curative instruction especially in light of the evidence adduced at trial implicating the petitioner.

It is readily apparent that codefendant counsel's objectionable comment, although maybe not a model for argument and possibly improper, having the potential to prejudice the jury, did not impair the fundamental fairness of the petitioner's trial, especially in light of the trial court's repeated instructions to the jury to rely on the evidence presented and not the comments of counsel when arriving at its verdict. In this case, even if the argument could have been understood by the jury to be an improper expression of codefendant counsel's opinion regarding the petitioner's guilt, the error was nevertheless harmless beyond a reasonable doubt. Any impropriety was isolated and did not permeate the entire trial. Moreover, it is apparent from the verdict rendered by the jury that the petitioner was not prejudiced by the subject remarks. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict).

In **claim 7.12**, the petitioner asserts that he was denied

effective assistance of counsel, where his lawyer failed to move the court to inquire into juror's professed need to be released from duty due to an undisclosed personal matter. (DE#1:6c).

The question of the partiality of an individual juror "is one of historical fact to which the presumption of correctness of a state court's factual findings under 28 U.S.C. §2254(d) applies." See Bundy v. Dugger, 850 F.2d 1402, 1426 (11th Cir. 1988), cert. denied, 488 U.S. 1034 (1989)(citing Patton v. Yount, 467 U.S. 1025, 1038 (1984)). Absent evidence to the contrary, the reviewing court must presume that the jurors were fair and impartial, "as indeed they were swore to be." United States v. Khoury, 901 F.2d 948, 955 (11th Cir. 1990) (footnote omitted). "Thus the question is whether there is fair support in the record for the state courts' conclusion that the jurors here would be impartial." Patton, 467 U.S. at 1038 (citing 28 U.S.C. § 2254(d)(8)). The Supreme Court reiterated this position in Mu'Min v. Virginia, 500 U.S. 415 (1991), noting that "[a] trial court's findings of juror impartiality may 'be overturned only for "manifest error."'" 500 U.S. at 428 (quoting Patton, 467 U.S. at 1031 (quoting Irvin v. Dowd, 366 U.S. 717, 723 (1961)).

Here, the petitioner complains of two instances during which the jurors complained to the court. Specifically, before closing argument the following colloquy was conducted on the record:

> COURT:    Ladies and gentlemen of the jury, thank you for your patience. We understand that one of the jurors had an issue she had to deal with and she has been able to take care of it, I hope. Yes?
>
> JUROR:    Me, yes. But I'd like to get out of here as soon as possible to take care of it, to really take care of it.
>
> COURT:    As soon as possible means when the closing arguments and --
>
> JUROR:    I was hoping I would be the alternate.

        COURT:      We already lost one of the alternates...this is the
                    panel that we have to use so we're going to get
                    started...

(T.1119-1120).


    The second complained of event occured when defense counsel
advised the court that he had overheard a juror telling
"corrections" to please inform the judge. (T.1189-1190). The court
responded that some jurors who were teachers had inquired whether
the case was going to go into the following day, to which the court
believed it had apprised the jury that the case might go to the
following day if no verdict was reached. (Id.).


    There is nothing to suggest that counsel should have sought a
mistrial based on the concerns expressed by the jurors. Moreover,
no evidence has been provided to establish that the jurors did not
follow the court's instructions during its deliberations. The
petitioner's conclusion that the jurors rushed to a verdict because
they wanted to be excused is purely speculative and unsupported by
the record. Consequently, no deficient performance or prejudice has
been established arising from counsel's failure to pursue this
claim. The state courts denial should therefore not be disturbed
here.


    In **claim 7.13**, the petitioner asserts that he was denied
effective assistance of counsel, where his lawyer failed to move the
court for a hearing or investigation into jury tampering when it
became known that a police officer was observed having an *ex parte*
communication with petitioner's jury panel. (DE#1:6c).


    During trial, codefendant's counsel advised the court that he
had gone outside the courtroom to see if one of his witnesses had

56

arrived when he saw the jury panel sitting outside. (T.755). Counsel indicated that he "heard" someone talking to them, or what "sounded" like a conversation. (Id.). Counsel could not determine, however, if the panel was conversing amongst themselves or with an individual not part of the panel. (Id.).

This claim that the jury was conversing with a state witness is meritless in that it is wholly conclusory without any substantiation whatever in the record except for the petitioner's own self-serving allegations. As was true in the state postconviction proceedings, the petitioner has not supported his claim with an affidavit from the jurors nor any other form of credible evidence that a prosecution witness, to-wit, an unidentified police officer, was conversing with the jury. Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his *pro se* petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'"). See also Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983).

In addition, when considering whether an evidentiary hearing or relief should be held on habeas claims based on occurrences outside the record, such as here, "no hearing is required if the allegations 'viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.'" Tejada, 941 F.2d at 1559 *citing*, Shah v. United States, 878 F.2d 1156, 1158 (9 Cir. 1989), *quoting*, Marrow v. United States, 772 F.2d 525, 526 (9 Cir. 1985). As appropriately noted by the state in the postconviction proceeding,

where the claim was summarily rejected by the trial court, in order to believe the petitioner's allegations, it must follow that the juror disregarded the court's several specific instructions given during the trial not to discuss the case with anyone. It is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987). Further, the evidence admitted at trial clearly supports the jury's finding of guilt. The petitioner is thus not entitled to relief on this claim.

In **claim 7.14**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to file a motion in limine to preclude the prosecution from introducing evidence of a victim's medical condition and the death of the petitioner's codefendant. (DE#1:6c). To the extent this claim is a mere reiteration of the arguments raised in connection with claim six above, it should be denied for the reasons expressed therein.

Independent review of the record reveals that the parties at one point or another mentioned the deaths of codefendant Jason Woodruff due to asthma, the death of a victim, Gerald Nevaloff, and that another victim, Maurice Barbakow, was suffering from terminal cancer. During the Rule 3.850 hearing, defense counsel testified that he did not believe the brief reference to these facts was made a feature of the trial by the prosecution nor was it an issue of any substance. (DE#14:Ex.D:3.850 Trans.:42).

Even if counsel was deficient for failing to seek a motion precluding a party from making mention of this information, and further assuming that the motion had been granted, no showing has been made that but for this information, the outcome of the guilt phase portion of the trial would have been different. In other words, the petitioner has failed to establish that brief references

to this information so inflamed the jury that it resulted in an automatic conviction. Such a conclusion, however, is not supported by the record. Consequently, the petitioner has failed to establish prejudice pursuant to <u>Strickland</u> and is not entitled to relief on this claim.

In **claim 7.15**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to inform petitioner that he had a right to ratify the jury strikes and object to the selection of the jury panel. (DE#1:6c). According to the petitioner, had counsel properly explained to him that he could participate in the jury selection process, he would have instructed counsel to strike jurors Planas and Gelber because of the responses during *voir dire*.

At the Rule 3.850 hearing, defense counsel testified that he did, in fact, discuss the jury selection process with the petitioner and conferred with him throughout *voir dire*. (DE#14:Ex.D:3.850Trans.:72). Counsel's recollection is supported by the record which reveals that at the conclusion of jury selection, the court specifically inquired of each defendant whether they had conferred with their attorneys regarding the selection of the jurors. (T.535). The petitioner specifically responded in the affirmative, indicating under oath that he had an opportunity to confer with his attorney and voiced his opinion regarding the selection of the jurors. (<u>Id</u>.).

Consequently, this claim is clearly refuted by the record. The petitioner has therefore failed to establish either deficient performance or prejudice and is entitled to no relief on this claim.

In **claim 7.16**, the petitioner asserts that he was denied

effective assistance of counsel, where his lawyer failed to investigate and move for discharge of the venire panel on the basis of racial disproportionality resulting from a systematic exclusion of blacks from the jury pool composition in Miami-Dade County, Florida. (DE#1:6c). The petitioner is apparently first alleging that the panel used in his trial improperly did not consist of a fair representation of African-American jurors and next claiming that the jury selection process itself was unconstitutional.

Although the petitioner is African-American and apparently there were only two African-Americans on the initial venire panel, this claim does not warrant habeas corpus relief. The Sixth Amendment guarantees a criminal defendant the right to a jury selected from a group representing a fair cross section of the community, however, "no requirement exists that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." <u>United States v. Green</u>, 742 F.2d 609 (11 Cir. 1984)(<u>citing</u> <u>Taylor v. Louisiana</u>, 419 U.S. 522, 538 (1975)).

Thus, in order to establish a prima facie Sixth Amendment case that the venire does not reflect a fair cross-section of the community, the petitioner must show (1) that the group underrepresented is a distinctive group in the community, (2) that the underrepresentation in the venire is not fair and reasonable in relation to the group's number in the community, and (3) that this underrepresentation is due to systematic exclusion of the group from the selection process. <u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979). <u>See also</u> <u>Cunningham v. Zant</u>, 928 F.2d 1006, 1013 (11 Cir. 1991). The petitioner has failed to meet this burden.

Neither at trial nor any other time in the state postconviction

proceedings, or now in this federal proceeding, has the petitioner presented any evidence whatever that the lack of African-Americans on the venire was due to their systematic exclusion from the selection process. See United States v. Tapia, 59 F.3d 1137, 1142-1143 (11 Cir.), cert. denied, 516 U.S. 1001 (1995). See Rich v. State, 807 So.2d 692 (Fla. 3 DCA), review den., 831 So.2d 672 (Fla. 2002)(quoting, United States v. Tapia, 59 F.3d at 1143). In other words, the petitioner has not demonstrated that the jury wheels, pools of names, panel, or venires from which his jury was drawn excluded African-Americans. Consequently, the petitioner's fair cross-section challenge is meritless. See United States v. Bastidas, 28 F.Supp.2d 1346, 1351 (M.D.Fla. 1998)(holding that defendant, who was Black Latino male, was not denied jury representing fair cross section of community, absent showing that jury wheels, pools of names, panel, or venires from which jury was drawn excluded Blacks or Latinos).

Finally, as to his apparent challenge that the particular jurors who served on the jury were biased, this assertion is also meritless. It is axiomatic that the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. Irvin v. Dowd, 366 U.S. 217, 222 (1961). However, even in a case where a juror is not struck for cause, but arguably should have been, a petitioner is not entitled to relief unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial. See Passman v. Blackburn, 652 F.2d 559, 567 (5 Cir. 1981), cert. denied, 455 U.S. 1022 (1982). But see Johnson v. Armontrout, 961 F.2d 748, 755 (8 Cir. 1992)(holding that absent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel). In Florida, the test for whether a juror is competent is "whether the juror can lay aside

any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instruction on the law given to him [or her] by the court."[20] Turner v. State, 645 So.2d 444, 446 (Fla. 1994).

The petitioner has failed to demonstrate that the jurors selected to serve on the jury impinged upon the fundamental fairness of his trial. After review of the *voir dire* proceeding in its entirety and the record as a whole, it is apparent from the responses given to the questions posed by the court and counsel for defense and the state that the jurors could be fair and impartial, that they understood the state's burden of proof, that they could follow the law as instructed by the court, and that they had no fixed belief in the petitioner's guilt. Further, the petitioner was present for jury selection and the strike conference.

There is no indication whatever in the record that the venire was composed in an unconstitutional manner and/or the jury selection process was conducted in an unconstitutional manner. Consequently, any related ineffective assistance of trial counsel claim is meritless. See Strickland v. Washington, 466 U.S. 668 (1984).

Accordingly, the state courts' denial of relief in the postconviction proceeding was clearly proper and should not be disturbed in this federal proceeding. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362 (2000).

In **claim 7.17**, the petitioner argues that counsel was ineffective and the cumulative effects of counsel's errors warrant

---

[20]Similarly, in the federal courts, a juror can be dismissed when just cause exists (i.e., when that juror refuses to apply the law or to follow the court's instructions). See generally United States v. Abbell, 271 F.3d 1286, 1302 (11 Cir.2001), cert. denied, 537 U.S. 813 (2002).

62

vacatur of his convictions. (DE#1:6c). This claim, however, is unexhausted and prospectively procedurally barred from review in this habeas proceeding. Notwithstanding, it also fails on the merits.

According to the petitioner, he was denied a fundamentally fair trial due to the impact of cumulative errors committed by defense counsel, the prosecution, and the trial court. For the reasons stated above, petitioner is not entitled to habeas corpus relief on any of the claims presented. When viewing the evidence in this case in its entirety, the alleged errors, neither individually nor cumulatively, infused the trial with unfairness as to deny petitioner a fundamentally fair trial and due process of law. Therefore, the petitioner is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertion, the result of the trial was not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). The fact that the defense presented at trial was not successful does not mean that counsel's performance was constitutionally ineffective. Defense counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing.[21] United

_____

[21]It appears that the petitioner might be attempting to raise a claim pursuant to United States v. Cronic, 466 U.S. 648 (1984). In some cases, counsel's failure or inability to subject the prosecution's case to meaningful adversarial testing violates the Sixth Amendment and makes the adversarial process presumptively unreliable. Id. at 659. When such a violation occurs, so as to render the trial presumptively unreasonable, no specific showing of

States v. Cronic, 466 U.S. 648, 659 (1984).

The record reflects that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). Defense counsel made a reasonable investigation of the facts, was well-prepared for trial, conducted full and extensive cross-examination of the state's witnesses, made appropriate objections, moved for judgment of acquittal, and presented a forceful closing argument.

Lastly, to the extent the petitioner appears to argue that he is entitled to a federal evidentiary hearing on his claims, that claim also warrants no habeas corpus relief here. If a habeas corpus petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of the claim." Holmes v. United States, 876 F.2d 1545, 1552 (11 Cir. 1989), quoting Slicker v. Wainwright, 809 F.2d 768, 770 (11 Cir. 1987). However, no hearing is required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. Holmes, supra at 1553. Here, for the reasons which have been discussed, the petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

## Conclusion

For the foregoing reasons, it is recommended that this petition

---

prejudice is required.  Id. The Eleventh Circuit applies the Cronic dicta only in a "narrow range of cases" where there is a "fundamental breakdown of the adversarial process," Chadwick v. Green, 740 F.2d 897, 900-01 (11 Cir. 1984), and concentrates instead on whether or not the accused was denied a fair trial. Hammonds v. Newsome, 816 F.2d 611, 613 (11 Cir. 1987). In this case, the petitioner was in no way denied a fair trial. As indicated herein, the record demonstrates that counsel subjected the state's case to a meaningful challenge.

for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 17th day of June, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Douglas Montgomery Lloyd, <u>Pro Se</u>
     DC#451537
     Okaloosa Correctional Institution
     3189 Little Silver Road
     Crestview, FL 32539-6708

     Michael C. Greenberg, Ass't Atty Gen'l
     Office of the Attorney General
     Department of Legal Affairs
     444 Brickell Avenue, Suite 650
     Miami, FL 33131