# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21660-CIV-LENARD/WHITE

**DOUGLAS MONTGOMERY LLOYD**,

    Petitioner,

vs.

**WALTER A MCNEIL,**

    Respondent.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE (D.E. 19); DENYING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 (D.E. 1); AND DISMISSING CASE

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge Patrick A. White ("Report," D.E. 19), issued on June 17, 2009.  In his Report, Magistrate Judge White recommends that the Court deny the instant Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition," D.E. 1).  Petitioner filed  his Objections to the Report on July 7, 2009 (D.E. 20).  Having reviewed the Objections and the record, the Court finds as follows.

### I.  Background

The following procedural and factual background comes from the Report and is not objected to in any substantial way by Petitioner.

Petitioner's underlying convictions stem from the armed robbery of a business, where

the occupants were tied up with duct tape, and their jewelry and valuables taken. At trial, the prosecution presented the testimony of five employees of the Community Redevelopment Center, a home renovation business, located on the second floor of a small office building on West Dixie Highway in the northwest section of Miami.  Barry Gerber, a financial administrator with the company, testified that on June 5, 1998, he was working, and as part of his Friday routine, he went to the bank in the morning to make deposits and pick up cash for bonuses for the office telemarketing personnel. On that date, he picked up $750.00 from the bank, and gave it to Joan Schwartz, who put it in a gray zipper bag in her office.

Gerber testified that, at approximately 1:15 p.m., he saw the door to the business open and a man carrying a silver revolver enter the premises.  At that time, the assailant held a gun to Gerber's head, ordered everyone to get down on the floor, and demanded to know the location of the money. In response, Gerber pointed towards the cabinet where the money was routinely kept. When Gerber opened the cabinet, the bag was not there, at which time, his co-worker Joan, indicated the bag was in a drawer near her work station. After locating the bag, Gerber handed it to the assailant, who then proceeded to tape Gerber's arms behind his back, but not before taking Gerber's rings and bracelet.  During the robbery, Gerber overheard one of the assailants yell, "Get the jewelry."  Shortly thereafter, the assailants left, and Gerber was able to free himself. Gerber testified that his jewelry had been recovered by police, and that the business normally did not have cash on hand except on Fridays.

Two undercover detectives, Silvio Alvarez and James Colangelo, testified they were

driving by the Community Redevelopment Corporation building when they observed three males running out towards the middle of the street. One of the individuals was carrying a shopping bag. The men then got into a blue car, where a fourth individual was waiting for them. As the blue car tried to leave, Detective Colangelo drove in front of it, blocking their exit, while Detective Alvarez pulled up behind the vehicle.  The blue car hit Detective Colangelo's car, at which time the detectives exited their vehicles with their revolvers drawn, and identified themselves.  Three men exited the vehicle and ran.  A fourth was caught as he tried to get out. A yellow bag found inside the blue car was identified by Detective Alvarez as the same bag that one of the men was observed holding as he ran down the street. Meanwhile, Detective Colangelo chased Petitioner and another assailant through an open field, where a firearm was later recovered.  Codefendant Jason Woodruff, was apprehended, but died as a result of an asthma attack he suffered during the chase.

In the interim, Patricia Desire, a teenager who lived several blocks from the scene, testified that on the day of the incident, she was walking home from school when she saw that the laundry room of her duplex was open. When she looked inside, she saw a stranger, who instructed her to shut up and close the door.  Shortly thereafter, while Desire was telling one of the officers in the area what she had observed, Petitioner fled the laundry room.

Petitioner was ultimately apprehended, when he was found by the police K-9 unit hiding underneath a house in the same neighborhood of the robbery. Thereafter, Desire was taken by police to a show-up identification, where she positively identified Petitioner from

3

among a group of men, as the individual who was concealed inside the laundry room of her duplex.  According to Desire, Petitioner was wearing a red shirt and brown pants which belonged to Desire's brother.  She further testified that a smelly pile of clothes, not belonging to her family, was left in the laundry room. Inside the wet pant pocket of one of the items left behind was some jewelry, money, and a Community Redevelopment business card, all belonging to one or more of the victims of the robbery.   At trial, Desire also positively identified Petitioner as the individual she observed in the laundry room.

Officer Fletcher, the crime scene investigator, testified that he looked inside the back seat of the blue get-away car, and saw a yellow plastic bag and a firearm on the backseat. The bag contained a bank bag, wallets, beepers, cell phones, jewelry, and identifications.  Latent fingerprints were taken from the blue vehicle, but only one matched Petitioner, and none matched the co-defendants.

The same day, June 5, 1998, Petitioner was charged with second degree felony murder, seven counts of armed robbery with a firearm, seven counts of false imprisonment with a firearm, possession of a firearm during the commission of a felony, felon in possession of a firearm, burglary of an unoccupied structure, and resisting an officer without violence, all arising from his involvement with three other assailants. Prior to trial, the prosecution dismissed the felony murder charge and two counts of armed robbery and false imprisonment, and nolle prossed the offense of burglary and resisting arrest. The felon in possession of a firearm charge was severed prior to trial. He then proceeded to trial, where

4

he was convicted of five counts of armed robbery with a firearm, five counts of false imprisonment, and possession of firearm in the commission of a felony, following a jury verdict. He was adjudicated guilty and sentenced to life in prison on the armed robbery and false imprisonment offenses. Thereafter, Petitioner pled guilty to the felon in possession of a firearm offense, and was sentenced as to that offense to a concurrent five year term of imprisonment.

Petitioner appealed, raising essentially the same claims as claims two and four of the instant Petition, as listed below. On April 30, 2003, based on the state's concession of error, the Third District Court of Appeal vacated petitioner's conviction for possession of a firearm in the commission of a felony and felon in possession of a firearm, and affirmed the remaining convictions and sentences. Lloyd v. State, 843 So.2d 364 (Fla. 3 DCA 2003).

On December 4, 2003, when Petitioner returned to the state court filing his first Rule 3.850 motion for postconviction relief raising a plethora of claims, including essentially claims three, five, six, and seven of this Petition, as listed below.  Following an evidentiary hearing, the trial court entered an order denying all of the claims on the finding that the errors complained of were without merit.. That denial was per curiam affirmed without published opinion. Lloyd v. State, 976 So.2d 1117 (Fla. 3 DCA 2007)(table). The appellate court's on-line docket reveals that rehearing and rehearing en banc were denied, with the mandate issuing on March 24, 2008.

While the above proceeding was still pending, Petitioner returned to the appellate

court filing a state petition for writ of habeas corpus, raising numerous claims of ineffective assistance of trial and appellate counsel, including essentially claim one of this federal petition, as listed above. On December 28, 2005, the habeas petition was denied in a published, written opinion. Lloyd v. State, 917 So.2d 988 (Fla. 3 DCA 2005). Rehearing was denied on February 8, 2006.  The Florida Supreme Court denied discretionary review. Lloyd v. State, 935 So.2d 1220 (Fla. 2006).

Petitioner filed the instant Petition on June 4, 2008. Petitioner makes seven main claims therein:

1.     His due process rights were violated and he was denied a fair trial on the basis that the jury instructions were unlawful, and appellate counsel was ineffective for failing to raise the issue on appeal, which deprived Petitioner of the relief granted his codefendant who did raise the issue.

2.     His convictions were obtained by the use of an impermissibly suggestive show-up procedure which violated Petitioner's due process rights, his right to a fair trial, and his right to have counsel present at the show-up.

3.     His constitutional rights were violated on the basis that the prosecution withheld exculpatory evidence.

4.     His due process rights were violated as there was insufficient evidence to support his convictions.

5.      His constitutional rights were violated on the basis that the trial judge was biased against Petitioner.

6.     His constitutional rights were violated on the basis that his convictions were obtained by prosecutorial misconduct.

7.     He was denied effective assistance of counsel, where his lawyer failed to:

    1.     properly and sufficiently advise petitioner of the evidence against him, the likelihood of conviction at trial, the state's burden of proof, and the consequences of rejecting the state's plea offer which caused Petitioner to make an unknowing and involuntary rejection of the prosecution's plea;

    2.     present evidence and argue the correct legal principle in support of Petitioner's motion to suppress the identification which was obtained by an impermissible, suggestive show-up;

3.    investigate and review available, recent research on eyewitness identifications and to procure an expert in the field of eyewitness identification reliability;

4.    present evidence in support of the defense theory asserted during opening statements;

5.    object and move for a mistrial at each incident of judicial misconduct;

6.    file a motion in limine to preclude Desire from testifying regarding the clothing Petitioner was wearing at the time he was arrested, and otherwise object at trial to its introduction on the basis that the prosecution failed to lay the proper foundation;

7.    act upon the state's Brady violation where the prosecution introduced at trial photographs of pants that were recovered from a laundry room which contained items taken from the victims;

8.    procure an expert to examine the fingerprint evidence and consult with the defense at trial;

9.    object and move to exclude opinion testimony of the prosecution's fingerprint examiner where the witness was never tendered nor accepted as an expert in that field;

10.    object and move for a mistrial at each incident of prosecutorial misconduct;

11.    object and move for a mistrial when codefendant's counsel during closing argument made a statement directly inferring Petitioner's guilt;

12.    move the court to inquire into juror's professed need to be released from jury duty due to an undisclosed personal matter;

13.    request a hearing or investigation into jury tampering when it became known that a police officer was observed having an ex parte communication with Petitioner's jury panel;

14.    file a motion in limine to preclude the prosecution from introducing evidence of the victim's medical condition and the death of Petitioner's codefendant;

15.    inform petitioner that he had a right to ratify the jury strikes and object to the selection of the jury panel;

16.    investigate and move for discharge of the venire panel on the basis of racial disproportionality resulting from a systematic exclusion of blacks from the jury pool composition in Miami-Dade County, Florida, (DE#1:6c); and,

17.    argue that the cumulative effects of counsel's errors warrant vacatur of his convictions.

## II.     The Report

Magistrate Judge White recommends in his Report that the Court reject all of Petitioner's claims.

As to claim one - that Petitioner's due process and equal protection rights were violated and he was denied a fair trial on the basis that the jury instructions at his trial were unlawful[1], and appellate counsel was ineffective for failing to raise the issue on appeal -

---

[1]     The challenged jury instructions on robbery and false imprisonment were as follows:

Before you can find defendants guilty of Robbery, the State must prove the following four elements beyond a reasonable doubt:

1. Douglas Lloyd and/or Gregory Dorsett took the money and property described in the charge from the person or custody of Barry Gerber, Eamon Toner, Allen Fried, Richard Koch, and Maurice Barbakow.

2. Force, violence, assault, or putting in fear was used in the course of the taking.

3. The property taken was of some value.

4. The taking was with the intent to permanently or temporarily deprive Barry Gerber, Eamon Toner, Allen Fried, Richard Koch and Maurice Barbakow of his right to the property or any benefit from it or appropriate the property of Barry Gerber, Eamon Toner, Allen Fried, Richard Koch, and Maurice Barbakow to his own or the use of any person not entitled to it.

Before you can find the defendants guilty of False Imprisonment, the State must prove two elements beyond a reasonable doubt:

1. Douglas Lloyd and/or Gregory Dorsett forcibly and/or by threat confined and/or restrained Barry Gerber, Eamon Toner, Allen Fried, Richard Koch, and Maurice Barbakow against his will.

2. Douglas Lloyd and/or Gregory Dorsett had no lawful authority.

Dorsett v. McRay, 901 So. 2d 225, 226 (Fla. 3d DCA 2005).

Magistrate Judge White found that the state habeas court's holding on the identical claim was correct.  The state habeas court held in pertinent part:

> Petitioner seeks a writ of habeas corpus based on our holding in <u>Dorsett v.</u> <u>McRay</u>, 901 So. 2d 225 (Fla. 3d DCA 2005). The petitioner, Douglas Montgomery Lloyd, was a co-defendant with Gregory Dorsett and both were tried together. In considering Dorsett's petition for a writ of habeas corpus, we determined that the court's jury instructions on robbery and false imprisonment resulted in fundamental error through the use of the "and/or" conjunction, which confusingly and incorrectly implied that either defendant could be convicted solely upon a finding that the other defendant's conduct satisfied the elements of the offenses. <u>Dorsett</u>, 901 So. 2d at 226.

> Had there been no material distinction between the cases of Gregory Dorsett and Douglas Montgomery Lloyd, we would certainly grant the relief sought, vacate the remaining convictions, and grant a new trial. However, in reviewing this case for fundamental error, we find that there exists a material distinction between the cases of Dorsett and Lloyd. Lloyd was allegedly one of the three armed gunmen that held up the victims in this case while Dorsett was allegedly the getaway driver. Dorsett was previously employed by the victims and, as a result, would have certainly been recognizable to the victims. After a careful review of the trial record, we find that there is nothing that Dorsett did or could have done which would have resulted in the wrongful conviction of Lloyd as a result of the improper "and/or" conjunction. As such, the trial court's error in giving a jury instruction on robbery and false imprisonment with an "and/or" conjunction was harmless as to Lloyd.

<u>Lloyd v. Crosby</u>, 917 So. 2d 988, 988-89 (Fla.3d DCA 2005).  Magistrate Judge White concurred with the Third DCA, finding that no due process violation or ineffective assistance of counsel occurred as a result of the jury instruction, because there is no possibility that Petitioner, an active participant, was convicted of the offenses based on the actions of the getaway driver, codefendant Dorsett.

As to claim two - that Petitioner's convictions were obtained by the use of an

9

impermissibly suggestive show-up procedure which violated the petitioner's due process rights, his right to a fair trial, and his right to have counsel present at the show-up - Magistrate Judge White found that the evidence gives ample assurance that the reliability of the victim's identification was not outweighed by the suggestiveness of the "show-up." Magistrate Judge White found that the witness, Patricia Desire, was able to closely observe Petitioner while he was in her laundry room, her description of Petitioner to the police, including his physical attributes and the clothing he was wearing was precise, detailed, and accurate, she was ultimately certain in identifying Petitioner when she appeared for the identification procedure approximately one hour after the crime, and that the identification procedure was not unduly suggestive.  Additionally, Magistrate Judge White found that Petitioner did not have a valid claim for violation of his right to counsel arising from the show-up identification procedure, because his Sixth Amendment rights had not yet attached at that time.

As to claim three - that Petitioner's constitutional rights were violated on the basis that the prosecution withheld the original pants found in the laundry room - Magistrate Judge White found that Petitioner could not satisfy any of the prongs under Brady v. Maryland, 373 U.S. 83 (1963) which require Petitioner to demonstrate (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material.  Magistrate Judge White found that there was no evidence suggesting that the prosecution suppressed the pants.  He further found that

Petitioner failed to demonstrate that the pants would have proved exculpatory; when, in fact, during closing argument, counsel strategically emphasized the fact that the pants were never introduced into evidence.  Finally, Magistrate Judge White found that, under the totality of the circumstances, even if the prosecution had produced and counsel introduced the subject pants at trial, no showing has been made that it would have affected the guilt phase portion of the trial.

As to claim four - that Petitioner's due process rights were violated as there was insufficient evidence to support his convictions - Magistrate Judge White found that all the elements of his convictions were satisfied by the evidence properly introduced at trial.

As to claim five - that Petitioner's constitutional rights were violated on the basis that the trial judge was biased against Petitioner - Magistrate Judge White found that nothing in the trial court's comments strayed from neutrality.

As to claim six - that Petitioner's constitutional rights were violated on the basis that his convictions were obtained by prosecutorial misconduct - Magistrate Judge White found that the challenged remarks, under the facts of this case, were fair comment on the evidence actually adduced at trial and did not render the trial fundamentally unfair. "Moreover, even if the prosecutor's objectionable comments could possibly be viewed as having the potential to prejudice the jury, the comments did not impair the fundamental fairness of the petitioner's trial and did not contribute to the conviction, especially in light of the trial court's repeated instructions to the jury to rely on the evidence presented and not the comments of counsel

when arriving at its verdict."  (D.E. 19 at 36.)

As to the many sub-claims of claim seven - Petitioner's ineffective assistance of counsel arguments - Magistrate Judge White found that these arguments were also without merit.

### III.    Objections

In his Objections, Petitioner objects to Magistrate Judge White's findings regarding claims one, two, and four.  Petitioner also objects to Magistrate Judge White's findings regarding his seventh claim, ineffective assistance of counsel; however, these objections only specifically address Magistrate Judge White's findings regarding ineffective assistance of counsel as to the issues of the pants found in the laundry room and the fingerprint found on the getaway car.  As such, as an initial matter, the Court need not address Magistrate Judge White's findings as to his third, fifth and sixth claims, and to the remainder of his ineffective assistance of counsel subclaims under his seventh claim.  See 28 U.S.C. § 636(b)(1) (district court is only required to make "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made").[2]

---

[2]        Petitioner attempts to object to Magistrate Judge White's findings regarding his second claim and remainder of his sub-claims in his seventh claim by "incorporating by reference" the arguments in his Reply.  However, Petitioner fails to point to any specific portion of the Report to which he objects.  This is insufficient to mandate de novo review by this Court.  See Heath v. Jones, 863 F.2d 815, 822 (11th Cir. 1989) ("In order to challenge the findings and recommendations of the magistrate [judge], a party must . . . file . . . written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. . . . Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a de novo determination of those portions of the report . . . to which objection is made and may accept,

## IV.   Discussion

### A.   Claim One

The essence of Petitioner's objection to Magistrate Judge White's findings as to claim one is that the Third DCA correctly granted his co-defendant's state habeas claim for the use of an "and/or" conjunction in their jury instructions, see Dorsett v. McRay, 901 So. 2d 225 (Fla. 3d DCA 2005), while incorrectly denying the same claim in his own state habeas petition, see Lloyd v. Crosby, 917 So. 2d 988, 989 (Fla. 3d DCA 2005), thereby constituting an unreasonable determination of the facts in lights of the evidence in his case and violating his right to equal protection.

As stated above, in Dorsett, the Third DCA found that fundamental error occurred when, through the use of the "and/or" conjunction in the jury instructions[3], the trial court

---

reject, or modify in whole or in part, the findings or recommendations made by the magistrate [judge].").

[3]    As footnoted, earlier, the challenged jury instructions on robbery and false imprisonment were as follows:

Before you can find defendants guilty of Robbery, the State must prove the following four elements beyond a reasonable doubt:

1. Douglas Lloyd and/or Gregory Dorsett took the money and property described in the charge from the person or custody of Barry Gerber, Eamon Toner, Allen Fried, Richard Koch, and Maurice Barbakow.

2. Force, violence, assault, or putting in fear was used in the course of the taking.

3. The property taken was of some value.

4. The taking was with the intent to permanently or temporarily deprive Barry Gerber, Eamon Toner, Allen Fried, Richard Koch and Maurice Barbakow of his

13

confusingly and incorrectly implied that Petitioner's co-defendant could be convicted solely upon a finding that Petitioner's conduct satisfied the elements of the offenses.  901 So.2d at 226.  However, in Petitioner's state habeas petition, the Third DCA declined to extend this holding to Petitioner's claim:

> Had there been no material distinction between the cases of Gregory Dorsett and Douglas Montgomery Lloyd, we would certainly grant the relief sought, vacate the remaining convictions, and grant a new trial. However, in reviewing this case for fundamental error, we find that there exists a material distinction between the cases of Dorsett and Lloyd. Lloyd was allegedly one of the three armed gunmen that held up the victims in this case while Dorsett was allegedly the getaway driver. Dorsett was previously employed by the victims and, as a result, would have certainly been recognizable to the victims. After a careful review of the trial record, we find that there is nothing that Dorsett did or could have done which would have resulted in the wrongful conviction of Lloyd as a result of the improper "and/or" conjunction. As such, the trial court's error in giving a jury instruction on robbery and false imprisonment with an "and/or" conjunction was harmless as to Lloyd.

Lloyd, 917 So.2d at 989.

Since this action was filed after the effective date of the Antiterrorism and Effective

---

right to the property or any benefit from it or appropriate the property of Barry Gerber, Eamon Toner, Allen Fried, Richard Koch, and Maurice Barbakow to his own or the use of any person not entitled to it.

Before you can find the defendants guilty of False Imprisonment, the State must prove two elements beyond a reasonable doubt:

1. Douglas Lloyd and/or Gregory Dorsett forcibly and/or by threat confined and/or restrained Barry Gerber, Eamon Toner, Allen Fried, Richard Koch, and Maurice Barbakow against his will.

2. Douglas Lloyd and/or Gregory Dorsett had no lawful authority.

Dorsett v. McRay, 901 So. 2d 225, 226 (Fla. 3d DCA 2005).

Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter, the "AEDPA"), April 24, 1996, the Court will analyze Petitioner's claim under 28 U.S.C. § 2254(d), as amended by the AEDPA.  See Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002). Under the AEDPA, however, the review is greatly circumscribed and highly deferential to the state courts. Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).  That is, federal habeas relief for a claim adjudicated on the merits in state court is available only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  When performing its review under § 2254(d), the Court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  Further, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

The Court finds that, under this deferential standard, Petitioner's claim is without merit.  First, the decision of the Third DCA in Petitioner's state habeas petition, Lloyd v. Crosby, 917 So. 2d 988, 989 (Fla. 3d DCA 2005), was not based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding. The Third DCA found that there was a material distinction between Petitioner's case and that of his co-defendant: evidence at trial established that Petitioner was identified as one of three men running out of scene of the robbery, his fingerprint was found on the getaway car, he was discovered hiding in a nearby apartment building by a teenage witness, he left behind pants containing the fruits of the robbery, he was found hiding underneath a house in the neighborhood of the robbery, and he was later identified by the teenage witness wearing her brother's clothes taken from the laundry room where he was originally discovered; on the other hand, as to his co-defendant, evidence at trial established that his co-defendant Dorsett was the getaway driver, was apprehended by witnesses after fleeing from the getaway car, and was an ex-employee of the robbed business.  Based on these different evidentiary showings and the two men's different roles in the crimes, the Third DCA found a material distinction between the two cases - as Petitioner was the gunman directly holding up the victims and Dorsett was the getaway driver -  and held that there is nothing that Dorsett did or could have done which would have resulted in the wrongful conviction of Petitioner as a result of the improper "and/or" conjunction, and thus any error was harmless.

This determination was consistent with the Florida Supreme Court's holding that, in order to be fundamental error, "'the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" Reed v. State, 837 So. 2d 366, 369 (Fla. 2002) (quoting State v. Delva,

575 So. 2d 643, 644-45 (Fla. 1991)).  While it is true that the use of "and/or" between the names of codefendants in jury instructions can result in fundamental error, see Berdecia v. State, 971 So. 2d 846, 850 (Fla. 3d DCA 2007), the error in an "and/or" instruction is not subject to any automatic or per se rule requiring reversal as to all co-defendants, see Aguilera v. State, 975 So. 2d 1270, 1273 (Fla.3d DCA 2008).  "Rather, a reviewing court is to consider the totality of the circumstances and to determine whether the acts of one codefendant, if erroneously attributed to another as a result of the erroneous instruction, may have reversibly infected the jury verdict."  Id.   In this case, it was not unreasonable for the Third DCA to find that Petitioner, as the gunman directly involved in the crime, could not have been convicted of robbery and false imprisonment based on the erroneous attribution of the acts of the get-away driver to him by the jury.

Second, the Court finds that Petitioner has no valid claim for violation of the equal protection clause of the Constitution, simply because the Third DCA applied different standards of review to error in Petitioner's case and that of his co-defendant based on the factual underpinnings of their respective convictions.

### B.    Claim Three

Petitioner's objects to three of Magistrate Judge White's findings as to his third claim: that the prosecution did not violate state law in failing to provide the pants; that the pants were not necessarily exculpatory; and that his counsel was not ineffective for failing to introduce the pants at trial. The Court finds that these objections are without merit.

17

In order to establish a violation of due process resulting from the prosecution's withholding of evidence, under the standard established in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the defendant must demonstrate (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. <u>United States v. Severdija</u>, 790 F.2d 1556, 1558 (11th Cir. 1986).

As to Petitioner's first objection, the Court agrees with Magistrate Judge White that Petitioner has failed to demonstrate that the state suppressed the pants.  Petitioner's trial counsel testified at his Rule 3.850 hearing that he knew about the pants prior to trial and told Petitioner about the existence of the pants.[4]

As to his second objection, the Court further agrees with Magistrate Judge White that Petitioner has failed to demonstrate that the pants, if they were suppressed, were exculpatory. Petitioner's trial counsel also testified at the Rule 3.850 hearing that had the pants not fit, he certainly would have had Petitioner try them on in front of the jury. Even in the absence of this testimony, Petitioner has failed to carry his burden of demonstrating that the pants were exculpatory.  Simply citing to the famous glove incident in the O.J. Simpson trial is insufficient to carry his burden.  The pants could just have easily have fit Petitioner as not. Accordingly, the rejection of this claim in the state forum was not in conflict with clearly

---

[4]       As such, there is no merit to Petitioner's claim that had he known about the existence of the pants, he would have requested that they be produced at trial or would have requested a <u>Richardson</u> hearing.  (<u>See</u> D.E. 30 at 8.)

established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

As to Petitioner's third objection, that Petitioner's trial counsel was ineffective because he failed to have Petitioner try them on in court, this argument is without merit.  To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result.  See Strickland v. Washington, 466 U.S. 668(1984).  As pointed out by Magistrate Judge White, Petitioner's trial counsel did not ignore the absence of the pants at the trial, but instead, during closing argument, argued that, because the state had failed to introduce the pants as evidence, there was reasonable doubt regarding whether these pants, in fact, belonged to Petitioner.  This is within the realm of reasonable trial strategy and as such is outside the realm of an ineffective assistance of counsel inquiry.  See Strickland v. Washington, 466 U.S. 668, 690 (1984). ("Strategic choices made after a thorough investigation are virtually unassailable.").

### C.     Claim Four

Petitioner also objects to Magistrate Judge's rejection of his fourth claim, that the evidence was insufficient to support his conviction in violation of his right to due process.  As stated by Magistrate Judge White, the standard for review of the sufficiency of the evidence on a petition for federal habeas corpus relief is whether the evidence presented, viewed in a light most favorable to the state, would have permitted a rational trier of fact to

find the petitioner guilty of the crimes charged beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979); <u>Smith v. White</u>, 815 F.2d 1401 (11 Cir. 1987). First of all, the Court finds that the totality of the evidence adduced at trial was more than sufficient to permit a rational trier of fact to find Petitioner guilty of the crimes charged beyond a reasonable doubt. That evidence included: Petitioner's fingerprint on the getaway car; the identification of Petitioner by the detective during the flight from the robbery; the identification of Petitioner by the teenage witness in the laundry room; the presence of fruits of the robbery in pants left in the same laundry room; the discovery of Petitioner underneath a nearby house by a police K-9 unit; and the teenage witness's subsequent identification of Petitioner in the "pull up," wearing the witness's brother's clothes. To the extent that Petitioner objects to the admission of this evidence, those objections are rejected elsewhere in the Report and those findings are adopted herein.

### D.   Claim Seven

Petitioner's objections regarding Magistrate Judge's findings as to his seventh claim and associated subclaims are limited to challenging Petitioner's counsel's performance regarding the pants found in the laundry room and the fingerprint taken off of the getaway car.

The Court has already addressed Petitioner's arguments regarding the government's alleged failure to produce the pants and Petitioner's counsel's strategy regarding the pants. Accordingly, the Court does not need to tread that path again.

As to Petitioner's claim of ineffective assistance of counsel regarding his counsel's failure to challenge the admissibility of the fingerprint, the Court finds this argument to be without merit.  Petitioner has failed to demonstrate why the state would not have been able to satisfy its burden of admitting the fingerprint into evidence.  Further, as evidenced by the record, Petitioner's trial counsel went to great lengths to challenge the credibility of the state's fingerprint expert on cross-examination and also argued in his closing argument that the single fingerprint was evidence of Petitioner's innocence as the government was unable to produce any other fingerprint evidence from the crime scene or the getaway car.  Finally, even if Petitioner were able to challenge the admission of the fingerprint, Petitioner would still be unable to demonstrate prejudice, as there was other, significant evidence suggesting his guilt.

Accordingly, Petitioner's Objections fail, and it is hereby **ORDERED AND ADJUDGED** that:

1.      The Report of Magistrate Judge Patrick A. White (D.E. 19), issued on June 17, 2009, is **ADOPTED**.

2.      The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, filed on or about June 11, 2008, is **DENIED**.

3.      This case is **CLOSED**.

4.      All pending motions not otherwise ruled upon are hereby **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida this 5th day of August, 2009.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

22